UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

RICHARD WEST and JOSEPH )
BRUYETTE, individually and )
on behalf of a class of )
similarly situated persons, )
)
        Plaintiffs, )
)
        v. )    Case No. 2:19-cv-81
)
AL GOBEILLE, Vermont )
Secretary of Human Services, )
MARTHA MAKSYM, Vermont Deputy )
Secretary of Human Services, )
MICHAEL TOUCHETTE, Vermont )
Department of Corrections )
Commissioner, BENJAMIN WATTS, )
Vermont Department of )
Corrections Health Services )
Director, in their official )
capacities, and CENTURION )
OF VERMONT, LLC, )
)
        Defendants. )

## OPINION AND ORDER

This case is a putative class action brought on behalf of

Vermont inmates and detainees who have been diagnosed with

chronic Hepatitis C Virus (HCV). The Complaint alleges that,

contrary to the prevailing standard of medical care, Defendants

have refused to provide available and effective treatment because

the treatment is expensive. The Complaint seeks declaratory and

injunctive relief so that class members can begin receiving

appropriate care.

Defendants assert that recent policy changes meet the

standard of care. They also contend that the named Plaintiffs'

claims are moot because they have either been offered care or are no longer incarcerated.  Plaintiffs argue that Defendants' policies and practices continue to violate constitutional standards, and that their claims survive a mootness challenge because they are seeking to represent a class.

Pending before the Court are Defendants' motion to dismiss for lack of subject matter jurisdiction and Plaintiffs' motion to certify the class.  For the reasons set forth below, the motion to dismiss is **denied** and the motion to certify is **granted**.

## Factual and Procedural Background

The following facts are alleged in the Complaint unless otherwise noted.  The named Plaintiffs seek to represent a class comprised of inmates and detainees in the custody of the Vermont Department of Corrections (DOC) who have been diagnosed with chronic HCV.  HCV is a highly communicable disease that scars the liver and can cause other severe health issues, including cancer and death.  Defendants include officials of the DOC and the Vermont Agency of Human Services (AHS), as well as the contracted prison healthcare provider, Centurion of Vermont, LLC ("Centurion").  The Complaint alleges that Defendants are denying or withholding curative HCV medications from Vermont inmates without medical justification in order to avoid the associated costs.

Beginning in 2011, the Food and Drug Administration approved

a series of breakthrough treatments for chronic HCV. Prior to that time, the recommended treatment options for chronic HCV were accompanied by significant adverse side effects, including liver failure, memory loss, and death. The new treatments, known as Direct Acting Anti-Viral drugs (DAAs), achieve a *de facto* cure (a Sustained Virologic Response) in more than 90% of cases. Treatment with DAAs generally consists of taking a single pill orally each day for 8-12 weeks. DAAs are now the medical standard of care for individuals with chronic HCV, except for those patients with a short life expectancy who cannot be saved by DAA treatment, liver transplantation, or another directed therapy.

The Complaint claims that Plaintiffs Richard West and Joseph Bruyette each have a life expectancy of more than one year, and that they requested DAA treatment from the DOC or officials acting on its behalf. At the time of the Complaint, their requests had allegedly been denied.

As of May 2019, DOC data showed that over 250 inmates in its care had chronic HCV. The majority were allegedly denied DAA treatment. According to DOC policy, inmates could only receive DAAs if they were certain to be imprisoned for at least one year from date of the treatment request. The Complaint alleges that inmates were also denied treatment due to unnecessary testing, alleged refusals to receive DAAs, and punitive or other non-

medical reasons.

Plaintiffs claim that Defendants' reasons for denying
treatment are in conflict with the standard of care and are not
medically justified. They further claim that Defendants' policy
or practice with respect to inmates suffering from chronic HCV
shows deliberate indifference to serious medical needs, thereby
violating the inmates' constitutional rights. Plaintiffs bring
their claims under the Eighth and Fourteenth Amendments and the
Americans with Disabilities Act. The state agency (DOC and AHS)
Defendants are sued in their official capacities, and the
Complaint requests declaratory and injunctive relief.

Defendants have moved to dismiss and have opposed class
certification. The motion to dismiss argues that West and
Bruyette are not entitled to relief because their claims are
moot. West has served his sentence and is no longer an inmate.
He also allegedly refused treatment. With respect to Bruyette,
Defendants submit that he had already been identified for
treatment when the Complaint was filed. Defendants further argue
that Plaintiffs have failed to state a claim under the ADA
because they are not alleging a denial of treatment based on a
disability. The motion for class certification is opposed as
premature and insufficient.

Plaintiffs dispute some of the factual assertions in the
motion to dismiss, particularly with respect to questions of

treatment refusal.  Plaintiffs also contend that exceptions to the mootness doctrine apply to named plaintiffs in a class action.  Finally, Plaintiffs defend their motion for class certification as a straightforward application of the qualifying factors.

**Discussion**

**I. Motion to Dismiss**

    **A.    Subject Matter Jurisdiction**

Among the pending matters, the Court must first address the motion to dismiss, and specifically the question of subject matter jurisdiction.  *See Przespo v. United States Post Office*, 177 F. Supp. 3d 793, 795 (W.D.N.Y. 2016) ("A motion questioning the Court's subject matter jurisdiction must be considered before other challenges since the Court must have jurisdiction before it can properly determine the merits of a claim." (quoting *Djordjevic v. Postmaster Gen., U.S. Postal Serv.*, 911 F. Supp. 72, 74 (E.D.N.Y. 1995)).  "Where jurisdiction is lacking . . . dismissal is mandatory."  *United Food & Commercial Workers Union v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994); *see also* Fed. R. Civ. P. 12(h)(3).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The

plaintiff bears the burden of establishing beyond a preponderance of the evidence that subject matter jurisdiction exists. *Id.; Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). "In reviewing a Rule 12(b)(1) motion to dismiss, the court 'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[ ].'" *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)). In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may refer to evidence outside the pleadings. *Makarova*, 201 F.3d at 113.

### 1. Standing

Defendants' motion argues that the named Plaintiffs lack standing because their claims are moot. Though standing and mootness may be interrelated, they are not the same. The Court first reviews the question of standing.

Standing consists of three fundamental elements. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an injury in fact, and the injury must be to "a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* The second element requires "a causal connection between the injury and the conduct complained of—the

injury has to be fairly traceable to the challenged action of the
defendant, and not the result of the independent action of some
third party not before the court."  *Id.*  "Third, it must be
likely, as opposed to merely speculative, that the injury will be
redressed by a favorable decision."  *Id.* at 561.  The plaintiff
carries the burden to establish these elements of constitutional
standing, which are to be "evaluated at the time the complaint is
filed."  *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*,
458 F. Supp. 2d 160, 167 (S.D.N.Y. 2006); *see also Lujan*, 504
U.S. at 570 n.5 (noting that "standing is to be determined as of
the commencement of suit").

With respect to the first element, Plaintiffs allege that
they both were suffering injuries as of the filing of the
Complaint because neither had received DAA treatment.  Indeed,
the Complaint claims that both West and Bruyette were in a DOC
facility, had been diagnosed with untreated chronic HCV, and that
DOC and Centurion repeatedly and continuously denied them DAA
treatment.  The Complaint further alleges, citing evidence-based
research, that untreated HCV carries with it a substantial risk
of future harm in the form of liver damage or other serious
health effects.

Defendants contend that Bruyette was not being denied
treatment at the time the case was filed, and have submitted
evidence beyond the Complaint for support.  Plaintiffs dispute

Defendants' characterization of that evidence, which consists primarily of Bruyette's prison grievance process. On April 8, 2019, Bruyette received a response to his grievance indicating that it had been "Denied." ECF No. 34 at 8. The narrative portion of the grievance decision instructed Bruyette to "work with the medical team in your current facility," and that out-of-state inmates like Bruyette would be "reviewed and triaged for initiation of treatment." *Id*. These statements, together with the grievance denial, do not establish that Bruyette either received or was slated to receive DAA treatment by the time the Complaint was filed in May 2019.

Defendants submit that West lacks standing because in August of 2018 he allegedly refused blood testing, thereby negating the element of causation. At the outset, Plaintiffs challenge the assertion that additional testing was necessary, since West's medical records reportedly show multiple diagnostic blood draws. ECF No. 45 at 10-11 n.6. Plaintiffs also note that West formally requested treatment at least six times between August 2018 and February 2019. Finally, Plaintiffs contend that West's alleged refusal of care constitutes a factual dispute, as he does not recall any such refusal. *Id.* at 11 n.8. And even without an alleged refusal of blood testing, West would not have qualified for treatment under the DOC policy allegedly in effect prior to December 2018 because his release date was less than a year away.

The Court finds that both Bruyette and West have satisfied
the first two elements for standing.  Injury in fact is
sufficiently alleged since both inmates were likely to suffer
imminent harm if appropriate treatment was denied.  Because DAA
treatment has been proven effective, Plaintiffs have also
asserted sufficient allegations of causation.  Defendants'
evidentiary submissions do not establish either that treatment
was provided or that either inmate refused to be treated.

The third element for standing is redressability.  At issue
is whether Plaintiffs' respective diseases would be favorably
impacted by declaratory and injunctive relief.  Defendants argue
that West's disease would not have improved with treatment while
he was incarcerated, as he was due for release weeks after the
Complaint was filed.  The essential question for standing,
however, is whether Plaintiffs' illnesses were being properly
treated when the Complaint was filed.  Outcomes after that date
are assessed as a matter of mootness, not standing.  *See Samele
v. Zucker*, 324 F. Supp. 3d 313, 327 (E.D.N.Y. 2018) ("Standing
relates to whether a litigant has a personal stake at the
commencement of an action, while mootness ensures that the
litigant's interest exists 'throughout the life of the lawsuit.'"
(quoting *Comer v. Cisneros*, 37 F.3d 775, 797–98 (2d Cir. 1994)).
Plaintiffs have alleged that DAAs are effective treatment, and
that they were not receiving such treatment when this action was

filed.  Plaintiffs have therefore met their burden with respect to redressability, and Defendants' motion to dismiss for lack of standing is **denied**.

### 2.  Mootness

Defendants also move to dismiss on the basis of mootness. Their motion contends that the entire case is moot because injunctive relief at this point will not aid either of the individually-named Plaintiffs.  Plaintiffs concede that on May 28, 2019, one week after the Complaint was filed, Bruyette was due to initiate DAA treatment.  It is also undisputed that West is no longer in DOC custody.  Nonetheless, given that this is a putative class action, the question remains whether inmates with chronic HCV are being properly treated.

"[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (internal quotation marks omitted)).  In other words, "under the general rule of mootness, courts' subject matter jurisdiction ceases when an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party." *County of Suffolk, N.Y. v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) (internal quotation marks and citation omitted).  In class actions, however, "an

individual plaintiff may continue to represent the interests of others even after any prospect of individual recovery has vanished." *Comer*, 37 F.3d at 798 (quoting 13A Charles A. Wright, et al., Federal Practice and Procedure § 3533.9, at 391 (1984 & Supp. 1994)).  As the Supreme Court has explained:

> There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion.  In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

*Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975).  Accordingly, courts have developed exceptions to mootness for class actions, including: the defendant voluntarily ceases the injury-causing conduct in an attempt to evade judicial scrutiny; the claims are inherently transitory; or the claims are capable of repetition, yet evading judicial review.  *Samele*, 324 F. Supp. 3d at 327.

Plaintiffs argue that the claims in this case are inherently transitory and should relate back to the filing of the Complaint. The Court agrees.  The inherently transitory exception applies to a putative class action if "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." *Salazar v. King*, 822 F.3d 61,

73 (2d Cir. 2016).  "Where class claims are inherently transitory, 'the termination of a class representative's claim does not moot the claims of the unnamed members of the class.'" *Samele*, 324 F. Supp. 3d at 330 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975)).

Plaintiffs submit that the prison population in Vermont is itself transitory.  For support, they cite a report from October 2015 showing that the average minimum sentence for prisoners convicted of a felony was less than two years for a "straight" sentence and under one year for a sentence that is "split" between incarceration and probation.  ECF No. 45 at 24.  For those convicted of a misdemeanor, the average was 49 days for "straight" sentences and 44 days for "split" sentences.  *Id.* Plaintiffs also note the impact of reintegration furloughs and earned credits, both of which can reduce incarceration time.  The Second Circuit has considered inmate claims as inherently transitory when presented with similar time-lines*. See, e.g., Zurak v. Regan*, 550 F.2d 86, 89–93 (2d Cir. 1977) (applying the exception to a class of prisoners defined as those serving sentences that were at most two years).  Furthermore, the proposed class includes pretrial detainees, most of whom will spend less time in prison than sentenced inmates. *See, e.g., Gerstein*, 420 U.S. at 111 n.11.

As the Seventh Circuit has noted, "the essence of the

[inherently transitory] exception is uncertainty about whether a claim will remain alive for any given plaintiff long enough for a district court to certify the class." *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010). The facts of this case bear out that uncertainty. Although Plaintiffs filed their motion for class certification at the same time as the Complaint, the claims of the two named Plaintiffs were mooted within weeks of those filings. Selection of newly-named Plaintiffs risks the same outcome, as inmates such as West may be released, or like Bruyette can be readily screened and deemed eligible for DAAs.[1]

With respect to "the constant existence of a class of persons suffering the alleged deprivation," the Court has no doubt that given the number of inmates and detainees who reportedly suffer from chronic HCV, "counsel has other clients with a continuing live interest in the issues." *Zurak*, 550 F.2d at 91-92. Defendants have tried to head off that conclusion by citing a change in DOC treatment policy effective December 2018. The change expands access to DAAs, though still does not extend treatment to all inmates and detainees diagnosed with chronic HCV. The legal adequacy of Defendants' current practice

---

[1] The Court is not suggesting that Defendants will intentionally "pick off" a named Plaintiff and identify him or her for treatment in order to moot the claim. Nonetheless, Bruyette's experience demonstrates that an individual can be rapidly identified and provided treatment, thus rendering the ailing inmate class highly dynamic.

constitutes a merits issue to be explored and resolved later in the case.

Plaintiffs also rely on the "relation back" doctrine to avoid Defendants' mootness challenge.  Relation back occurs upon certification of the class, which the Court addresses and resolves in Plaintiffs' favor in Section II below.  *See Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 223 (2d Cir. 2018), *cert. dismissed sub nom. Cadian Capital Mgmt., LP v. Klein*, 139 S. Ct. 1406 (2019) ("though a class technically does not exist before it has been certified, 'where the class is not certified until after the claims of the individual class representatives have become moot, certification may be deemed to relate back to the filing of the complaint in order to avoid mooting the entire controversy.'" (*quoting Robidoux v. Celani*, 987 F.2d 931, 939 (2d Cir. 1993)).  When relation back is applied, the claims of the class members survive even though the claims of the individual class representative(s) have become moot.  *See id.*; *Comer*, 37 F.3d at 799.

Relation back applies "[u]nder appropriate circumstances," which may include cases that are "inherently transitory."  *Comer*, 37 F.3d at 799.  For reasons discussed above, this is such a case.  Consequently, a cause of action exists for those inmates and detainees who, as with Bruyette and West in the days prior to the filing of the Complaint, are allegedly being denied

appropriate treatment for chronic HCV in violation of their
constitutional rights.  The motion to dismiss for lack of subject
matter jurisdiction is **denied.**

### B.   ADA Claim

Bruyette and West brought their ADA claims individually,
rather than as class representatives.  Because Bruyette is
receiving DAA treatment and West has been released from custody,
Plaintiff have agreed to voluntarily dismiss Count II of the
Complaint.  ECF No. 45 at 15 n.9.  The Court construes that
agreement as a motion under Fed. R. Civ. P. 15(a)(2), and
dismisses Plaintiffs' ADA claim in Count II without prejudice.

### C.   Defendant Gobeille

Defendants inform the Court that Defendant Al Gobeille is no
longer Commissioner of the Agency of Human Resource.  Under
Federal Rule of Civil Procedure 25(d), a public officer's
successor is automatically substituted as a party.  Once
Defendants name Gobeille's successor, the Court will order
amendment of the caption.  *See* Fed. R. Civ. P. 25(d).

## II.  Motion for Class Certification

Given that the Court has subject matter jurisdiction over
the Complaint, the next issue is class certification under Rule
23 of the Federal Rules of Civil Procedure.  Rule 23 authorizes
named plaintiffs to proceed on behalf of a class in three
distinct situations: when the rights of either the potential

class members or the party opposing the class would be harmed by piecemeal litigation, Fed. R. Civ. P. 23(b)(1); where the class seeks injunctive or declaratory relief against a party who has "acted or refused to act on grounds that apply generally to the class," Fed. R. Civ. P. 23(b)(2); and where questions common to the class predominate over individual questions and class adjudication would be superior to other available methods of resolving the controversy, Fed. R. Civ. P. 23(b)(3). *See Houser v. Pritzker*, 28 F. Supp. 3d 222, 240–41 (S.D.N.Y. 2014). Plaintiffs seek to certify a class under Rule 23(b)(2).

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 have been met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (internal citations and quotation marks omitted). The party seeking class certification "must affirmatively demonstrate his compliance with" Rule 23 by a preponderance of the evidence. *Id.* at 350. "The class action device is particularly well-suited in actions brought by prisoners due to the 'fluid composition' of the prison population

. . . [and] generally tend[s] to be the norm in actions such as this." *Clarkson v. Coughlin*, 783 F. Supp. 789, 797 (S.D.N.Y. 1992).

Plaintiffs propose a class that would include all persons: (1) who are in DOC custody; (2) who have been incarcerated for at least 14 days or have completed their initial healthcare screening, whichever occurs first; (3) who have been diagnosed with chronic HCV and are candidates for DAA treatment under the current standard of care; and (4) for whom DAA treatment has been or will be denied or withheld based on considerations that deviate from the medical standard of care. Reasons for deviation under the fourth category may include, but are not limited to: consideration of time left before release from DOC custody or an indefinite release date; a disciplinary record; a history of substance abuse or mental health issues; the acquisition of tattoos while incarcerated; and disease severity.

Under Rule 23, a proposed class must meet separate requirements set forth in Rules 23(a) and 23(b). The Rule 23(a) prerequisites to a class action are: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the

17

class." Fed. R. Civ. P. 23(a). These requirements are often referred to as numerosity, commonality, typicality, and adequacy of representation. *See General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). The Second Circuit has imposed an additional "implied requirement of ascertainability." *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015).

### A.   Rule 23(a) Requirements

#### 1.   Ascertainability

"A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Id.* at 24-25. Here, Plaintiffs have identified such criteria. Specifically, the question of custody is readily available from the DOC. Time of incarceration is also easily determined. An HCV diagnosis may be obtained through a blood test, and there is an existing group within the DOC that has already been diagnosed. Those under treatment, and those denied treatment, should be a matter of DOC record.

Defendants contend that the matter of ascertainability, and indeed the question of class certification generally, cannot be determined without discovery. That discovery would include an evaluation of the current treatment policy, which Defendants claim the Complaint overlooks. As noted above, the adequacy of the current policy is a merits question that need not be resolved

18

at the certification stage. *See, e.g., Amgen Inc. v. Connecticut Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). The Court finds that, based upon the current record, Plaintiffs have satisfied the requirement of ascertainability.

### 2. Numerosity

To establish numerosity, "the class [must be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *accord Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015). In the Second Circuit, numerosity is presumed for a class of forty or more plaintiffs. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011). Plaintiffs admit that the exact number of putative class members is not yet known. Nonetheless, the DOC estimates that at any given time there are approximately 250 people in its custody with chronic HCV. Plaintiffs contend that the DOC's length-of-custody requirement excludes three quarters of those people from receiving DAA treatment, and that in any event the class consist of over 100 people. Moreover, given that the proposed class includes pretrial detainees, the transitory nature of the class makes joinder of all members impracticable. These facts render the proposed class sufficiently numerous.

### 3. Commonality

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P.

23(a)(2).  The claims "must depend upon a common contention . . .
of such a nature that it is capable of classwide resolution—which
means that determination of its truth or falsity will resolve an
issue that is central to the validity of each one of the claims
in one stroke."  *Wal-Mart Stores, Inc.*, 564 U.S. at 350.  The
claims pertain to treatment of chronic HCV.  While reasons for
denial of treatment may vary among class members, a fundamental
common question is whether persons in DOC custody are being
treated according to the standard of care.  *See id.* (noting that
"for purposes of Rule 23(a)(2) even a single common question will
do" (citations and alterations omitted)); *see also, e.g., Hoffer
v. Jones*, 323 F.R.D. 694, 698 (N.D. Fla. 2017) (concluding that
class of inmates with chronic HCV had common claims since the
relief sought was "limited to changing Defendant's policies and
practices" and the Defendants had not "shown why differences in
symptoms and treatment considerations should preclude awarding
such class-wide relief").  Plaintiffs offer other commons issues,
including identifying the precise boundaries of Defendants'
policy or practice, and determining whether that policy or
practice constitutes deliberate indifference to a serious medical
need.  The Court agrees that these questions satisfy the
commonality requirement.

## 4.  Typicality

Typicality is satisfied if "each class member's claim arises

from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-N. Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001), *abrogated on other grounds by Wal-Mart*, 564 U.S. at 362, *as recognized in Amara v. CIGNA Corp.*, 775 F.3d 510 (2d Cir. 2014). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936–37.

Here, Plaintiffs allege a policy or practice of denying proper treatment for individuals with chronic HCV. Again, while there may be variations in individual cases, the fundamental claims are the same. See, e.g., *Barfield v. Cook*, No. 3:18-CV-1198 (MPS), 2019 WL 3562021, at *10 (D. Conn. Aug. 6, 2019) (concluding that "minor variations" among inmates with chronic HCV "do not undermine typicality"). Furthermore, "[t]ypicality may be assumed where [as in this case] the nature of the relief sought is injunctive and declaratory." *Nicholson v. Williams*, 205 F.R.D. 92, 99 (E.D.N.Y. 2001). The requirement of typicality has therefore been met.

### 5.   Adequacy of Representation

To demonstrate adequacy of representation, Plaintiffs must first show that counsel is qualified, experienced and generally

21

able to conduct the litigation. *See In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992). They must also show that the proposed class members do not have interests antagonistic to one another. *See id.* The Second Circuit has held that where plaintiffs seek injunctive and declaratory relief requiring defendants to comply with federal law, Rule 23(a)(4) is satisfied even if certain class members pose a potential conflict. *See Marisol v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997).

All members of the proposed class have consistent interests, as the Complaint seeks clear and adequate treatment practices for all DOC inmates and detainees with chronic HCV. Factual issues about Bruyette and West, and in particular their alleged denials of treatment, may be explored in discovery but do not disqualify them as class representatives at this time.[2] Questions of mootness with respect to both are resolved above. Finally, Plaintiffs' attorneys reportedly have significant experience with civil rights litigation on behalf of vulnerable populations, some of which has involved class action representation. The Court therefore finds the proposed class will be adequately

---

[2] As discussed briefly in the Court's ruling on the motion to dismiss, Plaintiffs dispute the assertion that either Bruyette or West denied treatment. Bruyette was reportedly given a consent agreement and, rather than refusing treatment, asked that he be able to review the agreement with counsel. Plaintiffs allege that once counsel approved the agreement, Bruyette agreed to accept treatment. With respect to West, Plaintiffs refer to his long history of requesting treatment prior to his release.

represented.

**B.    Rule 23(b) Requirements**

"Rule 23(b)(2) provides that an action may be maintained as
a class action if . . . 'the party opposing the class has acted
or refused to act on grounds generally applicable to the class,
thereby making appropriate final injunctive relief or
corresponding declaratory relief with respect to the class as a
whole.'" *Parker v. Time Warner Ent. Co., L.P.*, 331 F.3d 13, 18
(2d Cir. 2003) (quoting Fed. R. Civ. P. 23(b)(2)).  Here, the
primary allegation is that Defendants have refused to provide
appropriate medical care to members of the proposed class, and
that a single injunction and declaratory judgment will deliver
relief to all class members.  Those claims are plainly within the
ambit of Rule 23(b).  The motion to certify the class is
therefore **granted.**

## Conclusion

For the reasons set forth above, Defendants' motion to
dismiss (ECF No. 34) is **denied** and Plaintiffs' motion to certify
the class (ECF No. 2) is **granted.**  Count II of the Complaint is
dismissed without prejudice.

DATED at Burlington, in the District of Vermont, this 30th
day of March, 2020.

                              /s/ William K. Sessions III
                              William K. Sessions III
                              United States District Court Judge

23