# EXHIBIT 1

# No. 20-_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

RICHARD WEST AND JOSEPH BRUYETTE,
*Plaintiffs-Respondents*,

*v.*

MICHAEL SMITH, SECRETARY OF THE VERMONT AGENCY OF HUMAN
SERVICES, JAMES BAKER, COMMISSIONER OF THE VERMONT
DEPARTMENT OF CORRECTIONS, AND CENTURION OF VERMONT, LLC,
*Defendants-Petitioners.*

On Petition for Permission to Appeal Under FED. R. CIV. P. 23(f)
from the United States District Court for the
District of Vermont, No. 2:19-cv-81-wks

## RULE 23(f) PETITION FOR PERMISSION TO APPEAL

Jared C. Bianchi
Assistant Attorney General
Vermont Attorney General's Office
280 State Drive, HC2N
Waterbury, Vermont 05671-2080
(802) 241-0194
jared.bianchi@vermont.gov
Counsel for Petitioners Michael Smith and
James Baker

Stephen J. Soule, Esq.
PAUL FRANK + COLLINS PC
One Church Street, P.O. Box 1307
Burlington, VT 05402-1307
(802) 658-2311
ssoule@pfclaw.com
Counsel for Petitioner Centurion of
Vermont, LLC

# CONTENTS

**Page**

TABLE OF AUTHORITIES......................................................iii

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT.................................vi

QUESTIONS PRESENTED ..................................................... 1

STATEMENT OF FACTS........................................................ 2

REASONS WHY THE APPEAL SHOULD BE ALLOWED ................... 5

   I.  Immediate review is warranted because all of the named
      plaintiffs lack standing ...................................................... 9

         A. Plaintiffs lack Article III standing....................................... 10

         B. Plaintiffs lack standing to seek injunctive relief................. 12

         C. Plaintiffs do not have standing to assert the rights of
            pre-trial detainees............................................................... 14

         D. The effect of the new policy is a standing issue and
            standing is a certification issue ......................................... 17

  II.  Immediate review is warranted to remedy the district
      court's misapplication of the commonality requirement in
      this prisoner class-action ............................................... 18

         A. Application of Rule 23's commonality requirement to
            prisoner class-actions after Wal-Mart Stores, Inc. v.
            Dukes, 564 U.S. 338 (2011), is an important legal
            question that has divided courts........................................ 18

i

B. The district court's certification order fails to identify a common question that can be resolved in "one stroke." .... 19

III. The district court's failure to engage in a rigorous review or probe behind the pleadings led to reversible error ..................... 26

CONCLUSION  ....................................................................... 28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# AUTHORITIES

## Cases                                                    Page

*Amador v. Andrews*, 655 F.3d 89 (2d Cir. 2011) ..................................... 10

*Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635
   (2d Cir. 2005) ...................................................................................... 10

*Barfield v. Cook*, Docket No. 3:18-cv-1198, 2019 WL 3562021
   (D. Conn. Aug. 6, 2019) ....................................................................... 7

*Buffkin v. Hooks*, 2019 WL 1282785 (M.D.N.C. Mar. 20, 2019) ............ 23

*Chimenti v. Wetzel*, No. CV 15-3333, 2018 WL 2388665
   (E.D. Pa. May 24, 2018) ....................................................................... 24

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)..... 23

*Dearduff v. Washington*, 330 F.R.D. 452 (E.D. Mich. 2019)......... 8, 19, 21

*DeShawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340
   (2d Cir. 1998) ....................................................................................... 13

*Elizabeth M. v. Montenez*, 458 F.3d 779 (8th Cir. 2006) ....................... 13

*Hoffer v. Jones*, 323 F.R.D. 694 (N.D. Fla. 2017)................................... 24

*Hevesi v. Citigroup Inc.*, 366 F.3d 70 (2d Cir. 2004)............................... 6

*In re Sumitomo Copper Litig.*, 262 F.3d 134 (2d Cir. 2001) .................... 6

*Jones v. Smith*, 784 F.2d 149 (2d Cir. 1986).......................................... 12

*Keepers, Inc. v. City of Milford*, 807 F.3d 24 (2d Cir. 2015) .................. 11

*Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88

(2d Cir. 2018) ........................................................................ 21

*Lareau v. Manson*, 651 F.2d 96 (2d Cir. 1981) ........................................ 14

*Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59 (2d Cir. 2012) ..................... 10

*Nelson v. Deming*, 140 F. Supp. 3d 248 (W.D.N.Y. 2015)........................ 12

*Orr v. Schicker*, 953 F.3d 490 (7th Cir. 2020)................................. 7, 9, 28

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ......................................... 8

*Parsons v. Ryan*, 784 F.3d 571 (9th Cir. 2015) ......................................... 8

*Phillips v. Sheriff of Cook County*, 828 F.3d 541 (7th Cir. 2016) ....... 8, 25

*Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030
   (8th Cir. 2018) ................................................................. 9, 23

*Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002) ................. 10

*Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.*,
   2018 WL 739580 (S.D. N.Y. Jan. 10, 2018) ......................................... 23

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
   546 F.3d 196 (2d Cir. 2008)................................................................. 26

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)...................... passim

*Woodcock v. Correct Care Sols.*, LLC, 2019 WL 3068447
   (E.D. Ky. July 12, 2019) ........................................................................ 23

*Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017)......................................... 26

*Zurak v. Regan*, 550 F.2d 86 (2d Cir. 1977)..................................... 15, 16

**Statutes and Rules**

Fed. R. App. P. 43(c)(2)..................................................................... 2

Fed. R. Civ. P. 23............................................................ 18, 21, 26, 28

Fed. R. Civ. P. 23(a)............................................................................ 25

Fed. R. Civ. P. 23(b)..................................................................... 19, 26

Fed. R. Civ. P. 23(f) .......................................................................9, 19

Fed. R. Civ. P. 25................................................................................ 2

U.S. Const. amend. XIII.................................................................2, 24

U.S. Const. art. III........................................................................5, 9, 10

**Other Authorities**

Americans With Disabilities Act of 1990, Pub. L. No. 101-336,
    104 Stat. 328 (1990) ................................................................2

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Centurion of Vermont, LLC is a wholly owned subsidiary of

Centurion, LLC, which is a wholly owned subsidiary of MHM Services,

Inc., which is a wholly owned subsidiary of Centene Corporation, a

publicly traded corporation.

# QUESTIONS PRESENTED

1. Is immediate appellate review warranted because the district court certified a class even though both named plaintiffs lack standing?

2. Is immediate appellate review warranted because the district court certified a class based on allegations relating to a state policy that was abrogated and replaced months before plaintiffs' complaint was filed?

3. Is immediate appellate review warranted because the district court failed to apply a rigorous analysis before certifying a broad class of all pre-trial detainees and sentenced prisoners in Vermont custody who have tested positive for chronic Hepatitis C?

## STATEMENT OF FACTS

On May 21, 2019, plaintiffs Richard West and Joseph Bruyette filed a putative class action complaint alleging that the Vermont Department of Corrections (DOC) had violated the Eighth Amendment to the U.S. Constitution by failing to provide treatment for chronic Hepatitis-C (HCV).[1] Dist. Ct. ECF Doc. (Doc.) 1. Citing an abrogated DOC policy,[2] plaintiffs sought a court order requiring DOC to provide inmates with a specific type of medication known as direct acting antiviral treatment (DAAs). The complaint relied on a treatment policy that was changed substantially in December 2018, well before this suit was filed in May 2019. Doc 1.

Chronic HCV is a viral infection that primarily impacts liver function and progresses differently in each individual.  Some patients will live

---

[1] Defendants are the Secretary of the Vermont Agency of Human Services Michael Smith, DOC Commissioner James Baker, and Centurion of Vermont LLC, which contracts with DOC to provide healthcare services. Secretary Smith and Commissioner Baker have been automatically substituted for their predecessors pursuant to Fed. R. Civ. P. 25 and Fed. R. App. P. 43(c)(2). The named plaintiffs also asserted claims under the Americans with Disabilities Act (ADA), but those claims have been voluntarily dismissed.

[2] Plaintiffs acknowledge public statements that reflect a change in policy but do not acknowledge the new policy itself.

their entire lives without adverse symptoms from the infection; others will eventually deteriorate, developing cirrhosis and liver cancer. DAA treatment cures 90-95% of patients infected with chronic HCV. In order to avoid potentially adverse impacts to the patient and to prevent development of drug resistant HCV, the medical standard of care requires completion of treatment once begun. Doc. 52-1. Under the DOC's updated December 2018 HCV Treatment Protocol, all prisoners who are diagnosed with chronic HCV, and who have moderate to advanced liver fibrosis or evidence of cirrhosis, will receive DAA treatment without regard to the length of time remaining in custody. *See* Doc. 31 at 4-6 (discussing updated protocol and citing exhibits); Doc. 31-1 (December 2018 HCV Treatment Protocol). All other diagnosed prisoners, those with mild fibrosis, will also receive DAA treatment unless they do not have sufficient time remaining in custody to complete the treatment. *See id.*; see also Docs. 34-3, 52-2.

Simultaneously with the filing of their complaint, plaintiffs filed a motion to certify a class of prisoners on whose behalf they would pursue injunctive relief claims for DAA treatment. Doc. 2. Plaintiffs made this request without any discovery, testimony, or admissible expert

opinions. To support their request, plaintiffs again relied on an abrogated treatment policy that had been replaced by the December 2018 HCV Treatment Protocol. *See* Doc. 31-2. Plaintiffs submitted a declaration of a doctor who practices in Pennsylvania, who reviewed the superseded policy, but not the current HCV Treatment Protocol and was not familiar with the current treatment policies or practices employed by Petitioners since 2018. Doc. 2-7.

Plaintiff Bruyette was approved for DAA treatment before the complaint was filed. Doc. 34-3. Bruyette was notified that he had been approved to begin DAA treatment on May 28, 2019 and declined DAA treatment on the same day. Bruyette declined DAA treatment twice more before consenting on July 12, 2019. Vermont DOC began administering DAAs to Bruyette on July 15, 2019. Doc. 34-3.

On August 10, 2018, plaintiff West was advised by a Centurion healthcare provider about DAA treatment options, including the blood draw and laboratory testing that was required before DAA treatment could be considered. Doc. 34-3. Shortly after that, on August 21, 2018, Mr. West refused to consent to the necessary laboratory work. Later, on February 19, 2019, West agreed to the necessary labs and diagnostic

testing. Petitioners presented West's case to the independent infectious disease specialist in keeping with the current HCV Treatment Protocol. It was determined that West was not a candidate for DAA treatment because his remaining prison term did not allow sufficient time (a minimum of 24 weeks) to complete the treatment regimen. Petitioners offered to arrange for chronic HCV treatment through a community provider after West's release, but West initially declined before eventually allowing his facility case worker to do so. West was released from Vermont DOC's custody on June 23, 2019. Doc. 34-1.

## REASONS WHY THE APPEAL SHOULD BE ALLOWED

This Court should grant leave to appeal because the district court's mistaken certification order implicates important legal questions this Court has yet to address and which have divided other courts of appeal. Moreover, a reversal will effectively end this litigation because neither named plaintiff has Article III standing.

This Court has unfettered discretion to grant interlocutory review of a class certification order. Generally, leave to appeal should be granted if "the certification order will effectively terminate the litigation and there has been a substantial showing that the district court's decision is

questionable," *or* or "the certification order implicates a legal question about which there is a compelling need for immediate resolution." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 76 (2d Cir. 2004). Moreover, a petition that fails "to satisfy either of the [alternative] requirements may nevertheless be granted where it presents special circumstances that militate in favor of an immediate appeal." *Id.* at 76 n.4 (quoting *In re Sumitomo Copper Litig.*, 262 F.3d 134, 140 (2d Cir.2001)). "[I]nterlocutory review is particularly appropriate when it promises to spare the parties and the district court the expense and burden of litigating the matter to final judgment only to have it inevitably reversed by this Court on appeal after final judgment." *Sumitomo*, 262 F.3d at 139 (2d Cir. 2001). A novel legal question is grounds to approve an appeal where "it is of fundamental importance to the development of the law of class actions and it is likely to escape effective review after entry of final judgment." *Id.* at 140 (internal citations and quotation marks omitted).

This case requires immediate review because the certification order implicates a legal question about which there is a compelling need for immediate resolution. Claims like these are being litigated around the

country. These inmate access to DAA suits are, much like the medications they concern, relatively new. The Seventh Circuit recently reversed a class certification in such a case. *Orr v. Schicker*, 953 F.3d 490. The District of Connecticut recently granted in part and denied in part a similar request based on the distinction between detainees and sentenced inmates. *Barfield v. Cook*, Docket No. 3:18-cv-1198, 2019 WL 3562021, at **8-9 (D. Conn. Aug. 6, 2019) (excluding inmates with less than sixteen weeks remaining on their sentence from class definition). Suits such as this are either ongoing, or likely will be, in many of the districts within this Circuit. This Court's guidance regarding how to address these class actions will be valuable in these cases.

Here, the district court certified a sweeping class of sentenced inmates and pretrial detainees in Vermont custody on the allegations of two named sentenced plaintiffs who have already received the care they claim is unavailable. In 2018, the State of Vermont, with its healthcare contractor Centurion (jointly referred to herein as "Petitioners"), implemented one of the most treatment-focused chronic HCV programs of any correctional system in the country and inmates are receiving treatment consistent with the applicable standard of care. *See* Doc. 31

at 2-6 (discussing Vermont treatment protocol and comparing protocol to other state corrections systems).  The complaint nonetheless makes many allegations on the basis of a long-defunct treatment policy and fails to address the new policy. *See* doc. 1, ¶¶83, 119, 120 (discussing abrogated policy but not revised policy).

Immediate resolution of these legal issues is important because there is no clear guidance in the Second Circuit on the application of *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) commonality requirement to a prisoner class action. Other circuits have split on *Wal-Mart*'s application in this context. Compare *Phillips v. Sheriff of Cook County*, 828 F.3d 541 (7th Cir. 2016) (faithfully applying *Wal-Mart* to reverse certification of prisoner class action seeking adequate dental care where "one stroke" remedy was not available) with *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) (holding that *Wal-Mart* commonality did not preclude challenge to a system-wide polices by of 33,000 inmates seeking adequate healthcare); *see also Parsons v. Ryan*, 784 F.3d 571 (9th Cir. 2015) (Ikuta, J., dissenting from order denying rehearing *en banc* and explaining panel's misapplication of *Wal-Mart*); *Dearduff v.*

*Washington*, 330 F.R.D. 452, 463–66 (E.D. Mich. 2019) (examining circuit split).

Immediate resolution of this question, and reversal of the class certification order, will also effectively terminate the litigation because the two named plaintiffs no longer have claims. West has been released, and Bruyette has been treated with DAAs. In fact, the district court recognized that the claims of the named plaintiffs would be subject to dismissal as moot but for the class certification. Doc. 56 at 13.

Other circuits have recently accepted Rule 23(f) appeals in similar cases to resolve whether prisoner suit challenging the adequacy of DOC policies for treating may be certified as a class action. *Orr v. Shicker*, 953 F.3d 490, 493 (7th Cir. 2020) (accepting interlocutory appeal and reversing class certification order); *Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1038 (8th Cir. 2018) (accepting interlocutory appeal and affirming class certification order).

## I. Immediate review is warranted because all of the named plaintiffs lack standing.

Neither plaintiff in this case has standing under Article III or standing to seek injunctive relief. Moreover, both plaintiffs are or were

sentenced inmates and do not have standing to assert the detainee class members' distinct interests.

"Standing is an inherent prerequisite to the class certification inquiry." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002); *see also Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59 (2d Cir. 2012) (citing *Rivera* and discussing interplay between class and standing). If a putative representative plaintiff lacks standing, "a class action cannot be sustained." *Amador v. Andrews*, 655 F.3d 89, 99 (2d Cir. 2011).

While it is well-settled that standing is a class certification issue, there is little guidance concerning the interplay between the *Wal-Mart* rigorous analysis requirement and the requirement of standing. Here, the district court found standing based exclusively on the allegations in the complaint when it denied petitioners' motion to dismiss, Doc. 56, at 9, but failed to hold an evidentiary hearing or otherwise resolve any of the salient factual disputes and find that plaintiffs had established their standing based upon a preponderance of evidence, as is required for class certification. *See Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005

**A. Plaintiffs lack Article III standing.**

To establish constitutional standing, a plaintiff must demonstrate (1) that it has "suffered an injury in fact," which is (2) "fairly traceable to the challenged action of the defendant," and (3) "likely" to "be redressed by a favorable decision." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 38–39 (2d Cir. 2015). The named plaintiffs in this case have not met any of these requirements.

*Injury.* Due to West's short remaining term of incarceration at the time of filing, he could not be fully treated. He was being overseen by medical staff and consulting physicians. He presented no evidence that initiating medication before his release would have had any salutary effect or that it would be in any way superior to the plan in place. By contrast those doctors, as well as accepted HCV treatment guidelines, recognized the risk to the patient and the public of beginning treatment in jail that may be discontinued. Doc. 52-1. The risk is that the drugs may become less effective for the individual patient and risks creating a drug resistant strain of hepatitis. As to Bruyette, he had been approved for treatment before the complaint was filed.

*Causality*. Both West and Bruyette have refused treatment at some point in time. West initially declined the necessary viral load testing for

chronic HCV in August 2018, delaying his diagnosis and treatment eligibility until it was too late to provide a full course of treatment before his release. West also (initially) refused DOC's offer to arrange for community DAA treatment after his release. Bruyette refused DAA treatment on three separate occasions in May 2019 and June 2019 for personal reasons (his desire to transfer to a private facility in Mississippi), before finally accepting treatment. Their refusals subject them to a unique defense in this civil rights litigation. "It is well-settled that '[a]n inmate's refusal to receive treatment indicates that the inmate's treating doctors and nurses were not deliberately indifferent to the inmate's medical needs.'" *Nelson v. Deming*, 140 F. Supp. 3d 248, 261 (W.D.N.Y. 2015) (quoting *Jones v. Smith*, 784 F.2d 149, 152 (2d Cir. 1986)).

*Redressability*. Standing is assessed at the time of filing. An injunction would achieve nothing for West, because there was no evidence that partial treatment would have any clinical benefit or that the brief delay in treatment until his release was clinically significant. Likewise, for Bruyette, who had already been approved for treatment.

**B. Plaintiffs lack standing to seek injunctive relief.**

While past injuries may provide a basis for damages, "they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that [they are] likely to be harmed again in the future in a similar way." *DeShawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344–45 (2d Cir. 1998). At the time of filing neither plaintiff had any likelihood of future harm.

Standing to seek a particular form of relief can be relevant to class certification. The Eighth Circuit has held that a district court abuses its discretion when it certifies a "single unmanageable" class including plaintiffs who have standing to seek injunctions and those who do not. *Elizabeth M. v. Montenez*, 458 F.3d 779, 785 (8th Cir. 2006) ("district court abused its discretion by including present and former residents in a single, essentially unmanageable class."). This is especially important here where the certified class includes inmates and detainees – each set includes persons who will be incarcerated for long enough to receive a full course of treatment and those who will not. Here, plaintiffs like West, with an insufficient period of time to complete treatment in facility are like former residents in the *Elizabeth M.* matter. There is no clinical benefit to a partial course of DAAs, while there is a risk of

creating drug resistant strains of the disease if treatment is discontinued before completion. Inclusion of this population in the same class with persons who could receive the full course of treatment while in custody was an error.

### C. Plaintiffs do not have standing to assert the rights of pre-trial detainees.

The Vermont corrections system is responsible for both sentenced inmates and pre-trial detainees. Vermont correctional facilities thus function simultaneously as short-term jails and long-term prisons.

> The constitutional standard by which the legality of conditions of confinement for pretrial detainees is to be measured differs from that applicable in the case of sentenced inmates . . . thus, the conditions must, for the most part, be considered separately with respect to each group according to the applicable standard in order to determine their constitutionality as applied to that group.

*Lareau v. Manson*, 651 F.2d 96, 102 (2d Cir. 1981). In this case the district court certified a single class that includes both sentenced inmates and pre-trial detainees on the basis of claims by sentenced inmates only. Even assuming that there is merit to the sentenced plaintiffs' claims, the conditions of their confinement are not governed by the same constitutional provisions as that of pre-trial detainees and injuries to those distinct rights does not confer standing to assert the

14

separate rights of pre-trial detainees. The distinction between these groups is not merely academic. It is crucial in this case because the clinical standards of care recognize distinctions between proper clinical oversight of sentenced inmates serving more than one year on the one hand, and pre-trial detainees and persons serving sentences of less than one year on the other. Doc. 52-1 (discussing distinction between jails and prisons).

This problem is compounded by—and calls into question—the district court's express reliance on the inclusion of the detainees within the class as a basis for application of the transitory claims doctrine. Doc. 56, at 12. When assessing a moot claim for application of the transitory claim exception, the district court's uncertainty that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class should be the result of a probing analysis into that question, something that the district court failed to do in this case. The district court's decision to apply the transitory claims doctrine was based on plaintiffs' argument concerning the *average* sentence for Vermont inmates, the inclusion of detainees, and a misapplication of *Zurak v. Regan*, 550 F.2d 86 (2d Cir. 1977).

In a system like Vermont's, however, the average sentence does not establish that *no* class members' claim will survive for long enough to certify a class. While that may be true for the *average* inmate or detainee, HCV is a chronic lifelong illness and there are many inmates with sentences lasting years. By way of example, Bruyette's sentence is several decades long, and West's was fifteen years. Docs. 1, 2-2. Thus, the claim was deemed to relate back because of features of a sub-group (short sentenced and pre-sentenced people) within the putative class which neither plaintiff has and whose interests they cannot represent. This despite the distinction between these groups recognized in the clinical standard of care at issue.

The district court cited *Zurak v. Regan*, 550 F.2d 86 (2d Cir. 1977) for the proposition that cases with "similar time-lines" are transitory. Doc. 56, at 12. But *Zurak* dealt solely with inmates serving sentences of less than one year in a New York jail. *Id.* at 89–90 (discussing case as concerning inmates serving definite sentences of greater than 60 days and explaining that "Definite sentences under New York law never exceed one year").

16

Here, however, the "time lines" for sentenced inmates like plaintiffs and pre-trial detainees are not similar. The class certified by the district nonetheless includes both groups, despite the myriad distinctions between them in both treatment protocol and legal theory of relief. Before certifying such a class, a more probing analysis was required, establishing that standing and an ongoing justiciable suit had been proven to the degree required for class certification decisions and consisting of actual findings on disputed facts, not just a review of the sufficiency of the allegations.

### D. The effect of the new policy is a standing issue and standing is a certification issue.

The district court did not address the effect of the December 2018 HCV Treatment Protocol, holding that it was a merits issue. The complaint presents a theory of longstanding treatment deficiencies. But the new policy—enacted before the complaint was filed—governs all members of the proposed class and thus whether (1) DOC has acted or failed to act in a manner applicable to all members of the class and (2) whether the alleged treatment deficiencies persist under the current policy and if so whether those issues are sufficient to confer standing on the representatives or class members. A merits issue that overlaps with

a certification issue must be addressed at the certification stage and cannot be put off until the merits. *Wal-Mart*, 564 U.S. at 351–52. "Frequently that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. [T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.*

*       *       *

With respect to each of the foregoing issues, the district court did not engage in the rigorous analysis of the question of standing that is required before certifying the class that plaintiffs believe is required. Review should be granted to provide guidance to courts in this circuit concerning the interplay between standing and class certification.

## II. Immediate review is warranted to remedy the district court's misapplication of the commonality requirement in this prisoner class-action.

### A. Application of Rule 23's commonality requirement to prisoner class-actions after *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), is an important legal question that has divided courts.

Under Rule 23's commonality requirement, the proposed class must present common questions of law and fact, meaning that plaintiffs must

"demonstrate that the class members have suffered the same injury."
*Wal-Mart*, 564 U.S. at 349-50. Moreover, the class members' claims
"must depend on a common contention," and that common contention
"must be of such a nature that it is capable of class-wide resolution—
which means that determination of its truth or falsity will resolve an
issue that is central to the validity of each one of the claims in one
stroke." *Id.* at 350. Further, if plaintiffs can show a common violation of
their constitutional rights, then they must also show that the Court can
employ a single, specific injunction to remedy the violation. *Id.* at 360-
61 (discussing Rule 23(b)).

The Second Circuit has not yet provided guidance on the application
of *Wal-Mart*'s commonality framework to prisoner class actions, which,
as noted above, is an issue that has divided other circuits. *See Dearduff*,
330 F.R.D. at 463-66. Given the unsettled nature of the law, two other
circuit courts have recently accepted Rule 23(f) interlocutory appeals in
this exact context—to resolve whether prisoners may maintain a
statewide class-action challenge to a corrections agency's treatment
policies for chronic HCV. *See above* at 7-8.

## B. The district court's certification order fails to identify a common question that can be resolved in "one stroke."

Without guidance from this Court on the proper application of *Wal-Mart*'s commonality requirement, the district court determined that plaintiffs in this prisoner class action met their commonality burden by asserting that all putative class members suffer from chronic HCV and, therefore, all are subject to treatment for chronic HCV while in Vermont DOC's custody. The extent of the district court's analysis is three sentences:

> The claims pertain to treatment of chronic HCV. While reasons for denial of treatment may vary among class members, a fundamental common question is whether persons in DOC custody are being treated according to the standard of care. . . .  Plaintiffs offer other commons [sic] issues, including identifying the precise boundaries of Defendants' policy or practice, and determining whether that policy or practice constitutes deliberate indifference to a serious medical need.

Doc. 56, at 20. Although Vermont DOC offered unrebutted proof of the current HCV Treatment Protocol, the district court did not cite or rely on that current policy. In fact, the district court acknowledged that it was unsure of "boundaries of Defendants' policy or practice" for treating HCV, something that the court deferred for post-certification determination. Doc. 56 at 20.

The district court did not even define the policy to be enjoined, much less examine how the policy could give rise to a common violation of every inmate's constitutional rights in relation to treatment for HCV. This cursory commonality analysis does not satisfy Rule 23's "rigorous analysis" requirement. *See Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 98 (2d Cir. 2018) (where district court's analysis of commonality "consisted of one paragraph" that "did not sufficiently engage with [defendant's] arguments" and contained general statements that common issues existed, this did not comport with the "close look" required by precedent).

More fundamentally, the district court's commonality ruling is inconsistent with Supreme Court precedent. A conclusory finding that all class member claims "pertain to treatment of chronic HCV" falls well short of the determination required by *Wal-Mart*. The district court did not determine that the HCV Treatment Protocol actually *injures* every putative class member (many of whom likely have no complaint about or constitutional harm stemming from the treatment protocol), much less that every putative class member can assert a *common injury* stemming from the protocol. *See Dearduff*, 330 F.R.D. at 463-66

21

(explaining that, in a prisoner class, commonality requires more than identifying a common policy; plaintiffs must show that the policy subjects all inmates to a similar risk of harm no matter their individual health conditions).

Here, Plaintiffs have not identified a current policy or practice that applies to deprive all members of the putative class constitutionally adequate healthcare. Plaintiffs (and their expert) attacked a policy that DOC and Centurion do not follow, and—despite unrebutted proof as to the policy currently in effect—the district court simply accepted their assertions as true. The evidence presented to the district court demonstrated that since at least December 2018, Vermont DOC and Centurion have followed an HCV Treatment Protocol that removes restrictions on medical judgment, requires individualized treatment of chronic HCV pursuant to a community standard of care and in consultation with specialists at the University of Vermont Medical Center, and provides DAA treatment for all prisoners who are in custody for long enough to complete a full course of treatment.  *See* Doc. 31 at 4-6 (discussing treatment protocol and citing evidence). As explained by Centurion's medical director, DOC also provides DAA

treatment to all prisoners—regardless of time remaining in custody—who evidence advanced symptoms.[3]

Unlike the circumstances that led other courts to certify chronic HCV classes, DOC does not restrict the medical judgment of Centurion's doctors when treating chronic HCV patients. In the class actions certified by other courts, the corrections agencies had policies that *restricted medical judgment* across the board so that, even if doctors determined that a prisoner should receive DAA treatment, the policy operated to deny or delay that treatment. *E.g.*, *Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1035 (8th Cir. 2018) (agency used APRI fibrosis scores to limit treatment); *Woodcock v. Correct Care Sols.*, LLC, 2019 WL 3068447, *1 (E.D. Ky. July 12, 2019) (agency "rationed" DAA treatment to only 5% of infected population); *Buffkin v. Hooks*, 2019 WL

---

[3] The supporting declaration offered by plaintiffs' retained doctor, even if it could pass muster under *Daubert*, does not analyze the relevant policy—the December 2018 HCV Treatment Protocol. Defendants raised a *Daubert* challenge to plaintiffs' expert evidence, and the district court should have applied the rigorous standards established by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), before accepting that evidence.  As district courts in this circuit recognize, *Wal-Mart* "strongly implie[s] that *Daubert* does apply to expert testimony offered at the class certification stage . . . ." *See, e.g.*, *Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.*, 2018 WL 739580, at *3-*4 (S.D. N.Y. Jan. 10, 2018) (citation omitted).

1282785, *9 (M.D.N.C. Mar. 20, 2019) (agency limited DAA treatment to patients at liver fibrosis stage F2 or higher); *Chimenti*, 2018 WL 2388665 at *10 (agency limited DAA treatment based on fibrosis score). Indeed, in *Hoffer v. Jones*, 323 F.R.D. 694, 697-98 (N.D. Fla. 2017)—the lone case cited in the decision below—the Florida district court found that the challenged policy was one "of non-treatment for HCV, which exposes every HCV patient to the same risk, regardless of their symptoms." *Id.* at 698. *Hoffer* is now on appeal to the Eleventh Circuit.

As these cases demonstrate, identifying the governing HCV treatment policy is essential to a rigorous, evidence-based commonality analysis. In cases where a challenged HCV policy restricts medical discretion or entirely delays or omits treatment, courts can address a common question (whether the restrictive policy violates the Eighth Amendment) and, if warranted, grant class-wide relief with a single-stroke injunction that removes restrictions on medical judgment or requires treatment according to community standards of care. Because the challenged policies in those cases *imposed blanket restrictions* on medical judgment, those courts had no need to review individual prisoners' cases to determine why treatment was withheld and whether

24

there was a medical justification for doing so. Instead, a single-stroke injunction striking down the policy could free doctors to make patient-specific judgments and provide appropriate treatment.

DOC's 2018 HCV Treatment Protocol, in contrast to the policies challenged in those cases, *removes restrictions* on medical judgment, so that Centurion's medical professionals may provide DAA treatment when medically appropriate without regard to costs, fibrosis scores, or other restrictions. In other words, DOC's policy is the model that the other class actions were aiming to achieve. Under Vermont's policy, there is no common question or single-stroke remedy. Instead, to determine if the delay or withholding of DAA treatment amounts to deliberate indifference, the court will be required to look past the policy and examine a doctor's patient-specific medical judgments about proper treatment.

Such individualized claims cannot "productively be litigated at once" and, therefore, are not suitable for class treatment under Rule 23(a). *Wal-Mart*, 564 U.S. at 350; *accord Phillips*, 828 F.3d at 550 (prospective prisoner class "must articulate at least one common question that will actually advance all of the class members' claims."). Moreover, these

disparate, individual claims are not susceptible to single-stroke injunctive relief, and class treatment should be denied under Rule 23(b) as well. *Wal-Mart*, 564 U.S. at 360-61; *accord Yates v. Collier*, 868 F.3d 354, 366-68 (5th Cir. 2017) (prisoner class must identify specific injunctive remedy that, if granted, "would provide relief to each member of the class").

## III. The district court's failure to engage in a rigorous review or probe behind the pleadings led to reversible error.

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The preponderance standard applies to contested class certification facts. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 204 (2d Cir. 2008).

The district court's failure hold plaintiffs to their evidentiary burden affected the court's standing analysis, as discussed above, and also led to fatal errors in the Rule 23 numerosity and adequacy analysis.

*Numerosity*. The district court relied on plaintiffs' allegations about DOC's treatment protocol—rather than the actual and updated treatment protocol introduced by DOC—to determine that the class consisted of hundreds of inmates impacted by the policy. *See* Doc. 56 at 19. The updated policy ensures treatment for a much broader class of inmates and, as discussed in petitioners' unrebutted declaration, every inmate with a score of F2 or higher or with cirrhosis now receives treatment regardless of length of stay. *See* Doc. 31 at 4-6. This updated treatment protocol and unrefuted proof of treatment precludes a sufficient number of inmates from plausibly alleging a deliberate indifference claim.

*Adequacy*.  The district court failed to conduct a probing adequacy analysis or order additional discovery, notwithstanding the serious questions—supported by evidence—raised by DOC and Centurion. In fact, although the court certified a class for litigation by West and Bruyette as the only two class representatives, the court deferred the question of whether they are, in fact, *adequate* representatives until after merits-stage discovery.  *See* Doc. 56, at 22 ("Factual issues about Bruyette and West, and in particular their alleged denials of treatment,

may be explored in discovery but do not disqualify them as class representatives at this time.")  As the Seventh Circuit recently held, a district court commits reversible error by "skipping this important step" in the Rule 23 analysis. *Orr*, 953 F.3d at 500. In addition to the issues discussed above, the distinction between detainees and sentenced inmates presents a question in each of the certification elements.

## CONCLUSION

This Court should grant leave to appeal and reverse or vacate the District Court's order granting class certification.

DATED: April 13, 2020

Respectfully Submitted,

THOMAS J. DONOVAN, JR.
ATTORNEY GENERAL

By:   /s/ Jared Bianchi_____
Jared C. Bianchi
Assistant Attorney General
280 State Drive, HC2N
Waterbury, VT 05671-2080
(802) 241-0194
jared.bianchi@vermont.gov
Counsel for Petitioners Michael
Smith and James Baker

/s/ Stephen Soule_____
Stephen J. Soule, Esq.
PAUL FRANK + COLLINS PC

28

One Church Street
P.O. Box 1307
Burlington, VT 05402-1307
Telephone: 802.658.2311
Fax: 802.658.0042
ssoule@pfclaw.com
Counsel for Petitioner
Centurion of Vermont, LLC

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 5(c)(1) because this brief contains 5,189 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Century Schoolbook style.

DATED: April 13, 2020        THOMAS J. DONOVAN, JR.
ATTORNEY GENERAL

By:   /s/ Jared Bianchi
Jared C. Bianchi
Assistant Attorney General
280 State Drive, HC2N
Waterbury, VT 05671-2080
(802) 241-0194
jared.bianchi@vermont.gov
Counsel for Petitioners Michael
Smith and James Baker

/s/ Stephen Soule
Stephen J. Soule, Esq.
PAUL FRANK + COLLINS PC
One Church Street
P.O. Box 1307
Burlington, VT 05402-1307

Telephone: 802.658.2311
Fax: 802.658.0042
ssoule@pfclaw.com
Counsel for Petitioner
Centurion of Vermont, LLC

# CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2020, I caused an electronic pdf copy of petitioners State of Vermont and Centurion of Vermont, LLC's petition in this matter to be served upon all parties at their email addresses registered with the district court. All parties have consented to email service.

DATED: April 13, 2020

THOMAS J. DONOVAN, JR.
ATTORNEY GENERAL

By:   /s/ Jared Bianchi_____
Jared C. Bianchi
Assistant Attorney General
280 State Drive, HC2N
Waterbury, VT 05671-2080
(802) 241-0194
jared.bianchi@vermont.gov
Counsel for Petitioners Michael
Smith and James Baker

/s/ Stephen Soule_____
Stephen J. Soule, Esq.
PAUL FRANK + COLLINS PC
One Church Street
P.O. Box 1307
Burlington, VT 05402-1307
Telephone: 802.658.2311
Fax: 802.658.0042
ssoule@pfclaw.com
Counsel for Petitioner
Centurion of Vermont, LLC

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

RICHARD WEST and JOSEPH          )
BRUYETTE, individually and       )
on behalf of a class of          )
similarly situated persons,      )
                                 )
          Plaintiffs,            )
                                 )
          v.                     )     Case No. 2:19-cv-81
                                 )
AL GOBEILLE, Vermont             )
Secretary of Human Services,     )
MARTHA MAKSYM, Vermont Deputy    )
Secretary of Human Services,     )
MICHAEL TOUCHETTE, Vermont       )
Department of Corrections        )
Commissioner, BENJAMIN WATTS,    )
Vermont Department of            )
Corrections Health Services      )
Director, in their official      )
capacities, and CENTURION        )
OF VERMONT, LLC,                 )
                                 )
          Defendants.            )

## OPINION AND ORDER

This case is a putative class action brought on behalf of

Vermont inmates and detainees who have been diagnosed with

chronic Hepatitis C Virus (HCV).  The Complaint alleges that,

contrary to the prevailing standard of medical care, Defendants

have refused to provide available and effective treatment because

the treatment is expensive.  The Complaint seeks declaratory and

injunctive relief so that class members can begin receiving

appropriate care.

Defendants assert that recent policy changes meet the

standard of care.  They also contend that the named Plaintiffs'

claims are moot because they have either been offered care or are no longer incarcerated.  Plaintiffs argue that Defendants' policies and practices continue to violate constitutional standards, and that their claims survive a mootness challenge because they are seeking to represent a class.

Pending before the Court are Defendants' motion to dismiss for lack of subject matter jurisdiction and Plaintiffs' motion to certify the class.  For the reasons set forth below, the motion to dismiss is **denied** and the motion to certify is **granted**.

## Factual and Procedural Background

The following facts are alleged in the Complaint unless otherwise noted.  The named Plaintiffs seek to represent a class comprised of inmates and detainees in the custody of the Vermont Department of Corrections (DOC) who have been diagnosed with chronic HCV.  HCV is a highly communicable disease that scars the liver and can cause other severe health issues, including cancer and death.  Defendants include officials of the DOC and the Vermont Agency of Human Services (AHS), as well as the contracted prison healthcare provider, Centurion of Vermont, LLC ("Centurion").  The Complaint alleges that Defendants are denying or withholding curative HCV medications from Vermont inmates without medical justification in order to avoid the associated costs.

Beginning in 2011, the Food and Drug Administration approved

2

a series of breakthrough treatments for chronic HCV.  Prior to that time, the recommended treatment options for chronic HCV were accompanied by significant adverse side effects, including liver failure, memory loss, and death.  The new treatments, known as Direct Acting Anti-Viral drugs (DAAs), achieve a *de facto* cure (a Sustained Virologic Response) in more than 90% of cases. Treatment with DAAs generally consists of taking a single pill orally each day for 8-12 weeks.  DAAs are now the medical standard of care for individuals with chronic HCV, except for those patients with a short life expectancy who cannot be saved by DAA treatment, liver transplantation, or another directed therapy.

The Complaint claims that Plaintiffs Richard West and Joseph Bruyette each have a life expectancy of more than one year, and that they requested DAA treatment from the DOC or officials acting on its behalf.  At the time of the Complaint, their requests had allegedly been denied.

As of May 2019, DOC data showed that over 250 inmates in its care had chronic HCV.  The majority were allegedly denied DAA treatment.  According to DOC policy, inmates could only receive DAAs if they were certain to be imprisoned for at least one year from date of the treatment request.  The Complaint alleges that inmates were also denied treatment due to unnecessary testing, alleged refusals to receive DAAs, and punitive or other non-

medical reasons.

Plaintiffs claim that Defendants' reasons for denying treatment are in conflict with the standard of care and are not medically justified. They further claim that Defendants' policy or practice with respect to inmates suffering from chronic HCV shows deliberate indifference to serious medical needs, thereby violating the inmates' constitutional rights. Plaintiffs bring their claims under the Eighth and Fourteenth Amendments and the Americans with Disabilities Act. The state agency (DOC and AHS) Defendants are sued in their official capacities, and the Complaint requests declaratory and injunctive relief.

Defendants have moved to dismiss and have opposed class certification. The motion to dismiss argues that West and Bruyette are not entitled to relief because their claims are moot. West has served his sentence and is no longer an inmate. He also allegedly refused treatment. With respect to Bruyette, Defendants submit that he had already been identified for treatment when the Complaint was filed. Defendants further argue that Plaintiffs have failed to state a claim under the ADA because they are not alleging a denial of treatment based on a disability. The motion for class certification is opposed as premature and insufficient.

Plaintiffs dispute some of the factual assertions in the motion to dismiss, particularly with respect to questions of

4

treatment refusal.  Plaintiffs also contend that exceptions to the mootness doctrine apply to named plaintiffs in a class action.  Finally, Plaintiffs defend their motion for class certification as a straightforward application of the qualifying factors.

**Discussion**

## I. Motion to Dismiss

### A.    Subject Matter Jurisdiction

Among the pending matters, the Court must first address the motion to dismiss, and specifically the question of subject matter jurisdiction.  *See Przespo v. United States Post Office*, 177 F. Supp. 3d 793, 795 (W.D.N.Y. 2016) ("A motion questioning the Court's subject matter jurisdiction must be considered before other challenges since the Court must have jurisdiction before it can properly determine the merits of a claim." (quoting *Djordjevic v. Postmaster Gen., U.S. Postal Serv.*, 911 F. Supp. 72, 74 (E.D.N.Y. 1995)).  "Where jurisdiction is lacking . . . dismissal is mandatory."  *United Food & Commercial Workers Union v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994); *see also* Fed. R. Civ. P. 12(h)(3).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The

plaintiff bears the burden of establishing beyond a preponderance of the evidence that subject matter jurisdiction exists. *Id.*; *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). "In reviewing a Rule 12(b)(1) motion to dismiss, the court 'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[ ].'" *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)). In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may refer to evidence outside the pleadings. *Makarova*, 201 F.3d at 113.

### 1. Standing

Defendants' motion argues that the named Plaintiffs lack standing because their claims are moot. Though standing and mootness may be interrelated, they are not the same. The Court first reviews the question of standing.

Standing consists of three fundamental elements. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an injury in fact, and the injury must be to "a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* The second element requires "a causal connection between the injury and the conduct complained of—the

injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561. The plaintiff carries the burden to establish these elements of constitutional standing, which are to be "evaluated at the time the complaint is filed." *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 167 (S.D.N.Y. 2006); *see also Lujan*, 504 U.S. at 570 n.5 (noting that "standing is to be determined as of the commencement of suit").

With respect to the first element, Plaintiffs allege that they both were suffering injuries as of the filing of the Complaint because neither had received DAA treatment. Indeed, the Complaint claims that both West and Bruyette were in a DOC facility, had been diagnosed with untreated chronic HCV, and that DOC and Centurion repeatedly and continuously denied them DAA treatment. The Complaint further alleges, citing evidence-based research, that untreated HCV carries with it a substantial risk of future harm in the form of liver damage or other serious health effects.

Defendants contend that Bruyette was not being denied treatment at the time the case was filed, and have submitted evidence beyond the Complaint for support. Plaintiffs dispute

Defendants' characterization of that evidence, which consists
primarily of Bruyette's prison grievance process. On April 8,
2019, Bruyette received a response to his grievance indicating
that it had been "Denied." ECF No. 34 at 8. The narrative
portion of the grievance decision instructed Bruyette to "work
with the medical team in your current facility," and that out-of-
state inmates like Bruyette would be "reviewed and triaged for
initiation of treatment." *Id*. These statements, together with
the grievance denial, do not establish that Bruyette either
received or was slated to receive DAA treatment by the time the
Complaint was filed in May 2019.

Defendants submit that West lacks standing because in August
of 2018 he allegedly refused blood testing, thereby negating the
element of causation. At the outset, Plaintiffs challenge the
assertion that additional testing was necessary, since West's
medical records reportedly show multiple diagnostic blood draws.
ECF No. 45 at 10-11 n.6. Plaintiffs also note that West formally
requested treatment at least six times between August 2018 and
February 2019. Finally, Plaintiffs contend that West's alleged
refusal of care constitutes a factual dispute, as he does not
recall any such refusal. *Id.* at 11 n.8. And even without an
alleged refusal of blood testing, West would not have qualified
for treatment under the DOC policy allegedly in effect prior to
December 2018 because his release date was less than a year away.

8

The Court finds that both Bruyette and West have satisfied the first two elements for standing. Injury in fact is sufficiently alleged since both inmates were likely to suffer imminent harm if appropriate treatment was denied. Because DAA treatment has been proven effective, Plaintiffs have also asserted sufficient allegations of causation. Defendants' evidentiary submissions do not establish either that treatment was provided or that either inmate refused to be treated.

The third element for standing is redressability. At issue is whether Plaintiffs' respective diseases would be favorably impacted by declaratory and injunctive relief. Defendants argue that West's disease would not have improved with treatment while he was incarcerated, as he was due for release weeks after the Complaint was filed. The essential question for standing, however, is whether Plaintiffs' illnesses were being properly treated when the Complaint was filed. Outcomes after that date are assessed as a matter of mootness, not standing. *See Samele v. Zucker*, 324 F. Supp. 3d 313, 327 (E.D.N.Y. 2018) ("Standing relates to whether a litigant has a personal stake at the commencement of an action, while mootness ensures that the litigant's interest exists 'throughout the life of the lawsuit.'" (quoting *Comer v. Cisneros*, 37 F.3d 775, 797–98 (2d Cir. 1994)). Plaintiffs have alleged that DAAs are effective treatment, and that they were not receiving such treatment when this action was

filed.  Plaintiffs have therefore met their burden with respect
to redressability, and Defendants' motion to dismiss for lack of
standing is **denied**.

      **2.  Mootness**

    Defendants also move to dismiss on the basis of mootness.
Their motion contends that the entire case is moot because
injunctive relief at this point will not aid either of the
individually-named Plaintiffs.  Plaintiffs concede that on May
28, 2019, one week after the Complaint was filed, Bruyette was
due to initiate DAA treatment.  It is also undisputed that West
is no longer in DOC custody.  Nonetheless, given that this is a
putative class action, the question remains whether inmates with
chronic HCV are being properly treated.

    "[A] case is moot when the issues presented are no longer
live or the parties lack a legally cognizable interest in the
outcome." *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)
(quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (internal
quotation marks omitted)).  In other words, "under the general
rule of mootness, courts' subject matter jurisdiction ceases when
an event occurs during the course of the proceedings or on appeal
that makes it impossible for the court to grant any effectual
relief whatever to a prevailing party." *County of Suffolk, N.Y.
v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) (internal quotation
marks and citation omitted).  In class actions, however, "an

individual plaintiff may continue to represent the interests of others even after any prospect of individual recovery has vanished." *Comer*, 37 F.3d at 798 (quoting 13A Charles A. Wright, et al., Federal Practice and Procedure § 3533.9, at 391 (1984 & Supp. 1994)). As the Supreme Court has explained:

> There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

*Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975). Accordingly, courts have developed exceptions to mootness for class actions, including: the defendant voluntarily ceases the injury-causing conduct in an attempt to evade judicial scrutiny; the claims are inherently transitory; or the claims are capable of repetition, yet evading judicial review. *Samele*, 324 F. Supp. 3d at 327.

Plaintiffs argue that the claims in this case are inherently transitory and should relate back to the filing of the Complaint. The Court agrees. The inherently transitory exception applies to a putative class action if "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." *Salazar v. King*, 822 F.3d 61,

11

73 (2d Cir. 2016). "Where class claims are inherently
transitory, 'the termination of a class representative's claim
does not moot the claims of the unnamed members of the class.'"
*Samele*, 324 F. Supp. 3d at 330 (quoting *Gerstein v. Pugh*, 420
U.S. 103, 110 n.11 (1975)).

Plaintiffs submit that the prison population in Vermont is
itself transitory. For support, they cite a report from October
2015 showing that the average minimum sentence for prisoners
convicted of a felony was less than two years for a "straight"
sentence and under one year for a sentence that is "split"
between incarceration and probation. ECF No. 45 at 24. For
those convicted of a misdemeanor, the average was 49 days for
"straight" sentences and 44 days for "split" sentences. *Id.*
Plaintiffs also note the impact of reintegration furloughs and
earned credits, both of which can reduce incarceration time. The
Second Circuit has considered inmate claims as inherently
transitory when presented with similar time-lines. *See, e.g.,*
*Zurak v. Regan*, 550 F.2d 86, 89–93 (2d Cir. 1977) (applying the
exception to a class of prisoners defined as those serving
sentences that were at most two years). Furthermore, the
proposed class includes pretrial detainees, most of whom will
spend less time in prison than sentenced inmates. *See, e.g.,*
*Gerstein*, 420 U.S. at 111 n.11.

As the Seventh Circuit has noted, "the essence of the

12

[inherently transitory] exception is uncertainty about whether a claim will remain alive for any given plaintiff long enough for a district court to certify the class." *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010). The facts of this case bear out that uncertainty. Although Plaintiffs filed their motion for class certification at the same time as the Complaint, the claims of the two named Plaintiffs were mooted within weeks of those filings. Selection of newly-named Plaintiffs risks the same outcome, as inmates such as West may be released, or like Bruyette can be readily screened and deemed eligible for DAAs.[1]

With respect to "the constant existence of a class of persons suffering the alleged deprivation," the Court has no doubt that given the number of inmates and detainees who reportedly suffer from chronic HCV, "counsel has other clients with a continuing live interest in the issues." *Zurak*, 550 F.2d at 91-92. Defendants have tried to head off that conclusion by citing a change in DOC treatment policy effective December 2018. The change expands access to DAAs, though still does not extend treatment to all inmates and detainees diagnosed with chronic HCV. The legal adequacy of Defendants' current practice

---

[1] The Court is not suggesting that Defendants will intentionally "pick off" a named Plaintiff and identify him or her for treatment in order to moot the claim. Nonetheless, Bruyette's experience demonstrates that an individual can be rapidly identified and provided treatment, thus rendering the ailing inmate class highly dynamic.

constitutes a merits issue to be explored and resolved later in the case.

Plaintiffs also rely on the "relation back" doctrine to avoid Defendants' mootness challenge.  Relation back occurs upon certification of the class, which the Court addresses and resolves in Plaintiffs' favor in Section II below.  *See Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 223 (2d Cir. 2018), *cert. dismissed sub nom. Cadian Capital Mgmt., LP v. Klein*, 139 S. Ct. 1406 (2019) ("though a class technically does not exist before it has been certified, 'where the class is not certified until after the claims of the individual class representatives have become moot, certification may be deemed to relate back to the filing of the complaint in order to avoid mooting the entire controversy.'" (*quoting Robidoux v. Celani*, 987 F.2d 931, 939 (2d Cir. 1993)).  When relation back is applied, the claims of the class members survive even though the claims of the individual class representative(s) have become moot.  *See id.; Comer*, 37 F.3d at 799.

Relation back applies "[u]nder appropriate circumstances," which may include cases that are "inherently transitory."  *Comer*, 37 F.3d at 799.  For reasons discussed above, this is such a case.  Consequently, a cause of action exists for those inmates and detainees who, as with Bruyette and West in the days prior to the filing of the Complaint, are allegedly being denied

14

appropriate treatment for chronic HCV in violation of their constitutional rights.  The motion to dismiss for lack of subject matter jurisdiction is **denied.**

### B.   ADA Claim

Bruyette and West brought their ADA claims individually, rather than as class representatives.  Because Bruyette is receiving DAA treatment and West has been released from custody, Plaintiff have agreed to voluntarily dismiss Count II of the Complaint.  ECF No. 45 at 15 n.9.  The Court construes that agreement as a motion under Fed. R. Civ. P. 15(a)(2), and dismisses Plaintiffs' ADA claim in Count II without prejudice.

### C.   Defendant Gobeille

Defendants inform the Court that Defendant Al Gobeille is no longer Commissioner of the Agency of Human Resource.  Under Federal Rule of Civil Procedure 25(d), a public officer's successor is automatically substituted as a party.  Once Defendants name Gobeille's successor, the Court will order amendment of the caption.  *See* Fed. R. Civ. P. 25(d).

## II.  Motion for Class Certification

Given that the Court has subject matter jurisdiction over the Complaint, the next issue is class certification under Rule 23 of the Federal Rules of Civil Procedure.  Rule 23 authorizes named plaintiffs to proceed on behalf of a class in three distinct situations: when the rights of either the potential

15

class members or the party opposing the class would be harmed by
piecemeal litigation, Fed. R. Civ. P. 23(b)(1); where the class
seeks injunctive or declaratory relief against a party who has
"acted or refused to act on grounds that apply generally to the
class," Fed. R. Civ. P. 23(b)(2); and where questions common to
the class predominate over individual questions and class
adjudication would be superior to other available methods of
resolving the controversy, Fed. R. Civ. P. 23(b)(3). *See Houser
v. Pritzker*, 28 F. Supp. 3d 222, 240-41 (S.D.N.Y. 2014).
Plaintiffs seek to certify a class under Rule 23(b)(2).

"The class action is 'an exception to the usual rule that
litigation is conducted by and on behalf of the individual named
parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,
348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01
(1979)). "In determining the propriety of a class action, the
question is not whether the plaintiff or plaintiffs have stated a
cause of action or will prevail on the merits, but rather whether
the requirements of Rule 23 have been met." *Eisen v. Carlisle &
Jacquelin*, 417 U.S. 156, 178 (1974) (internal citations and
quotation marks omitted). The party seeking class certification
"must affirmatively demonstrate his compliance with" Rule 23 by a
preponderance of the evidence. *Id.* at 350. "The class action
device is particularly well-suited in actions brought by
prisoners due to the 'fluid composition' of the prison population

. . . [and] generally tend[s] to be the norm in actions such as this." *Clarkson v. Coughlin*, 783 F. Supp. 789, 797 (S.D.N.Y. 1992).

Plaintiffs propose a class that would include all persons: (1) who are in DOC custody; (2) who have been incarcerated for at least 14 days or have completed their initial healthcare screening, whichever occurs first; (3) who have been diagnosed with chronic HCV and are candidates for DAA treatment under the current standard of care; and (4) for whom DAA treatment has been or will be denied or withheld based on considerations that deviate from the medical standard of care. Reasons for deviation under the fourth category may include, but are not limited to: consideration of time left before release from DOC custody or an indefinite release date; a disciplinary record; a history of substance abuse or mental health issues; the acquisition of tattoos while incarcerated; and disease severity.

Under Rule 23, a proposed class must meet separate requirements set forth in Rules 23(a) and 23(b). The Rule 23(a) prerequisites to a class action are: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the

17

class." Fed. R. Civ. P. 23(a). These requirements are often
referred to as numerosity, commonality, typicality, and adequacy
of representation. *See General Tel. Co. v. EEOC*, 446 U.S. 318,
330 (1980). The Second Circuit has imposed an additional
"implied requirement of ascertainability." *Brecher v. Republic
of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015).

### A. Rule 23(a) Requirements

#### 1. Ascertainability

"A class is ascertainable when defined by objective criteria
that are administratively feasible and when identifying its
members would not require a mini-hearing on the merits of each
case." *Id.* at 24-25. Here, Plaintiffs have identified such
criteria. Specifically, the question of custody is readily
available from the DOC. Time of incarceration is also easily
determined. An HCV diagnosis may be obtained through a blood
test, and there is an existing group within the DOC that has
already been diagnosed. Those under treatment, and those denied
treatment, should be a matter of DOC record.

Defendants contend that the matter of ascertainability, and
indeed the question of class certification generally, cannot be
determined without discovery. That discovery would include an
evaluation of the current treatment policy, which Defendants
claim the Complaint overlooks. As noted above, the adequacy of
the current policy is a merits question that need not be resolved

at the certification stage.  *See, e.g., Amgen Inc. v. Connecticut Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).  The Court finds that, based upon the current record, Plaintiffs have satisfied the requirement of ascertainability.

### 2.   Numerosity

To establish numerosity, "the class [must be] so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); *accord Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015).  In the Second Circuit, numerosity is presumed for a class of forty or more plaintiffs.  *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011).  Plaintiffs admit that the exact number of putative class members is not yet known.  Nonetheless, the DOC estimates that at any given time there are approximately 250 people in its custody with chronic HCV.  Plaintiffs contend that the DOC's length-of-custody requirement excludes three quarters of those people from receiving DAA treatment, and that in any event the class consist of over 100 people.  Moreover, given that the proposed class includes pretrial detainees, the transitory nature of the class makes joinder of all members impracticable.  These facts render the proposed class sufficiently numerous.

### 3.   Commonality

The commonality requirement is satisfied if "there are questions of law or fact common to the class."  Fed. R. Civ. P.

19

23(a)(2). The claims "must depend upon a common contention . . .
of such a nature that it is capable of classwide resolution—which
means that determination of its truth or falsity will resolve an
issue that is central to the validity of each one of the claims
in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. The
claims pertain to treatment of chronic HCV. While reasons for
denial of treatment may vary among class members, a fundamental
common question is whether persons in DOC custody are being
treated according to the standard of care. *See id.* (noting that
"for purposes of Rule 23(a)(2) even a single common question will
do" (citations and alterations omitted)); *see also, e.g., Hoffer
v. Jones*, 323 F.R.D. 694, 698 (N.D. Fla. 2017) (concluding that
class of inmates with chronic HCV had common claims since the
relief sought was "limited to changing Defendant's policies and
practices" and the Defendants had not "shown why differences in
symptoms and treatment considerations should preclude awarding
such class-wide relief"). Plaintiffs offer other commons issues,
including identifying the precise boundaries of Defendants'
policy or practice, and determining whether that policy or
practice constitutes deliberate indifference to a serious medical
need. The Court agrees that these questions satisfy the
commonality requirement.

### 4. Typicality

Typicality is satisfied if "each class member's claim arises

20

from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-N. Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001), *abrogated on other grounds by Wal-Mart*, 564 U.S. at 362, *as recognized in Amara v. CIGNA Corp.*, 775 F.3d 510 (2d Cir. 2014). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936–37.

Here, Plaintiffs allege a policy or practice of denying proper treatment for individuals with chronic HCV. Again, while there may be variations in individual cases, the fundamental claims are the same. See, e.g., *Barfield v. Cook*, No. 3:18-CV-1198 (MPS), 2019 WL 3562021, at *10 (D. Conn. Aug. 6, 2019) (concluding that "minor variations" among inmates with chronic HCV "do not undermine typicality"). Furthermore, "[t]ypicality may be assumed where [as in this case] the nature of the relief sought is injunctive and declaratory." *Nicholson v. Williams*, 205 F.R.D. 92, 99 (E.D.N.Y. 2001). The requirement of typicality has therefore been met.

### 5.    Adequacy of Representation

To demonstrate adequacy of representation, Plaintiffs must first show that counsel is qualified, experienced and generally

able to conduct the litigation.  *See In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992).  They must also show that the proposed class members do not have interests antagonistic to one another.  *See id.*  The Second Circuit has held that where plaintiffs seek injunctive and declaratory relief requiring defendants to comply with federal law, Rule 23(a)(4) is satisfied even if certain class members pose a potential conflict.  *See Marisol v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997).

All members of the proposed class have consistent interests, as the Complaint seeks clear and adequate treatment practices for all DOC inmates and detainees with chronic HCV.  Factual issues about Bruyette and West, and in particular their alleged denials of treatment, may be explored in discovery but do not disqualify them as class representatives at this time.[2]  Questions of mootness with respect to both are resolved above.  Finally, Plaintiffs' attorneys reportedly have significant experience with civil rights litigation on behalf of vulnerable populations, some of which has involved class action representation.  The Court therefore finds the proposed class will be adequately

---

[2] As discussed briefly in the Court's ruling on the motion to dismiss, Plaintiffs dispute the assertion that either Bruyette or West denied treatment.  Bruyette was reportedly given a consent agreement and, rather than refusing treatment, asked that he be able to review the agreement with counsel.  Plaintiffs allege that once counsel approved the agreement, Bruyette agreed to accept treatment.  With respect to West, Plaintiffs refer to his long history of requesting treatment prior to his release.

represented.

**B.    Rule 23(b) Requirements**

"Rule 23(b)(2) provides that an action may be maintained as a class action if . . . 'the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.'"  *Parker v. Time Warner Ent. Co., L.P.*, 331 F.3d 13, 18 (2d Cir. 2003) (quoting Fed. R. Civ. P. 23(b)(2)).  Here, the primary allegation is that Defendants have refused to provide appropriate medical care to members of the proposed class, and that a single injunction and declaratory judgment will deliver relief to all class members.  Those claims are plainly within the ambit of Rule 23(b).  The motion to certify the class is therefore **granted.**

## Conclusion

For the reasons set forth above, Defendants' motion to dismiss (ECF No. 34) is **denied** and Plaintiffs' motion to certify the class (ECF No. 2) is **granted.**  Count II of the Complaint is dismissed without prejudice.

DATED at Burlington, in the District of Vermont, this 30th day of March, 2020.

/s/ William K. Sessions III
William K. Sessions III
United States District Court Judge

23