United States District Court
District of Vermont

RICHARD WEST and JOSEPH
BRUYETTE, individually and on behalf
of a class of similarly situated persons,

Plaintiffs,

v.  No. 02:19-cv-00081-WKS

MICHAEL SMITH, Vermont Secretary of
Human Services, JANE DOE, Vermont
Deputy Secretary of Human Services,
JAMES BAKER, Interim Vermont
Department of Corrections Commissioner,
JOHN DOE, Vermont Department of
Corrections Health Services Director, in
their official capacities, and CENTURION
OF VERMONT, LLC,

Defendants.

## Plaintiffs' Opposition to Defendants' Motion to Stay

Plaintiffs oppose Defendants' latest attempt to frustrate the progress of this case. For years, Defendants have refused to provide life-saving treatment in accordance with the standard of care and continue to put the certified class at untenable risk of severe, irreparable health consequences. A stay in this matter will only further the Defendants' years-long practice of denying or withholding curative medication to hundreds of inmates with chronic Hepatitis C Virus ("HCV"), through their all-too effective long-term strategy of obfuscation, concealment of relevant facts, and unnecessary delay. This Court should not allow the Defendants another opportunity to thwart Plaintiffs' efforts to reform Defendants' unconstitutional policies or practices. Additional delay will also prolong the substantial risk of serious harm to hundreds of inmates with chronic HCV

who are currently without curative treatment at the hands of the Defendants. One of the Defendants' primary reasons relied on in support of the motion—the ongoing COVID-19 pandemic—weighs substantially against the granting of a stay. The class is made up of individuals who suffer from a contagious, infectious, viral disease. If anything, the additional risk posed by COVID-19 underscores the urgency of the risk faced by individuals with HCV; the class needs no reminder from the Defendants about the dangers and difficulties it poses. Furthermore, the Defendants' pending petition for interlocutory appeal is unlikely to succeed, and they have not shown that proceeding to discovery will do them irreparable harm. The Court should deny Defendants' motion to stay proceedings in this Court pending the Second Circuit's consideration of their petition for interlocutory appeal of the class certification order, and proceed to a scheduling order under Fed. R. Civ. P. 16(b) as soon as is practicable.[1]

## Statement of Facts

The Complaint in this matter was filed on May 21, 2019. ECF No. 1. This Complaint followed a years-long dialogue between a coalition of health care advocates and state officials. As the Defendants concede, the Department of Corrections ("DOC") treated only a single inmate in its custody with HCV in 2017. ECF No. 1-7. "Beginning early that year and throughout the years since, the advocacy coalition sought information about the Defendants' policy and practice, only to repeatedly face obfuscation, vague standards, and outright refusal to provide details necessary to

---

[1] To the extent that the ongoing state of emergency warrants adjustments to the normal course of discovery, the Court may consider those exigencies in the scheduling order it hands down.

understand whether the Defendants were meeting constitutional and statutory obligations." ECF No. 39 at 3 (opposing Defendants' first motion to stay discovery). At the time of the Complaint, the Defendants' policies and practices for treatment of HCV could only be "cobbled together from [] recent statements and data, as well as produced documents, a draft policy, grievance denials, and the recent amendment to the contract with Defendant Centurion." ECF No. 1 at ¶ 120.[2]

Whatever the truth of the Defendants' actual policies or practices for HCV treatment, available evidence—including thousands of pages of documents produced in response to public records requests—reveals that delay is a central tenet of their overall strategy. As early as the filing of the Complaint, Plaintiffs were aware of this tactic, alleging "inmates have complained of being denied treatment outright, being refused treatment until their circumstances placed them outside the Defendants' length-of-custody criteria, only being treated after submitting multiple grievances, being required to submit to unnecessary and repeated diagnostic tests to forestall DAA treatment, and being told they refused treatment when they did not." ECF No. 1 at 29 n.4. Defendants' litigation conduct has only confirmed this strategy. In response to the motion for class certification, the Defendants initially participated in a dialogue aimed at proposing a

---

[2] In the context of defending this litigation, the Defendants assert that their current official policy was put into place in December 2018. In so doing, the Defendants point to a one-page, unpublished internal letter that purports to set forth a treatment protocol in three bullet points. As Plaintiffs will illustrate at the merits stage, the letter is internally contradictory, vague, and significantly at odds with the experiences of members of the class. Even accepting this letter as an accurate statement of current policy, the Defendants continue to impose non-clinical criteria (such as length of incarceration) on HCV treatment decisions and employ a disease-severity threshold for determining who will be referred for testing that is a prerequisite for DAA treatment. *See* ECF No. 31-7; *see also* ECF No. 1 at ¶¶ 100-119 (reviewing the history of Defendants' public explanations of its HCV treatment policy both immediately before and after December 2018).

discovery schedule to the Court, before abruptly changing course and moving to stay discovery. *See* ECF No. 48 at 1-2; ECF No. 47 at ¶ 5 & Ex. 3.

Next, to the contrary of Defendants' assertions that the parties "for all intents and purposes, treated the litigation as stayed," ECF No. 61 at 1, Plaintiffs embarked on a campaign to alert Defendants of class members in need of immediate treatment. Between October 2019 and February 2020, Plaintiffs wrote to Defendants no fewer than 15 times, submitting sworn declarations of individuals seeking immediate HCV treatment. Costello Decl. at ¶¶ 1, 4. Each letter included a declaration from the individual in question describing their relevant medical history and unsuccessful efforts to receive treatment from Defendants. *Id.* at ¶ 4. Plaintiffs' counsel also submitted to DOC releases allowing DOC to share medical records for many of these individuals. *Id.* In response, the Defendants were largely silent, offering only a single formal response that generally referred such individuals to the routine, internal grievance process. *Id.* at ¶¶ 3, 5. Now, in seeking another stay, Defendants characterize these pleas for help as nothing more than an "exchange of medical records based on informal requests." ECF No. 61 at 4. Far from treating the matter as stayed, Plaintiffs have pressed the class's needs forward at every opportunity, while Defendants have largely refused to acknowledge the class-wide nature of the litigation, seeking delay at every turn. With the class now certified, the time for Defendants' ongoing recalcitrance should be put to an end.

**Argument**

Federal Rule of Civil Procedure 23(f) provides that courts of appeal may permit an appeal from a class certification decision, but that such an "appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders." Second Circuit caselaw on stay requests in the 23(f) context is sparse, but courts generally apply the same analysis that applies in assessing requests for preliminary injunctions and in other stay-pending-appeal contexts. In the Second Circuit, unlike in most, these are two different tests. In this Circuit, a party moving for a preliminary injunction must establish "(1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor, and (2) irreparable harm in the absence of the injunction." *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 183-84 (2d Cir. 2019). The stay-pending-appeal analysis is similar, but not identical: "The four factors to be considered in issuing a stay pending appeal are well known: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (vacating stay even though "any proceedings in the District Court pending appeal will irreparably impair, at least to some extent, [movants'] alleged claim to immunity from suit" (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)) (footnote omitted)); *see also In re Petrobas Sec. Litig.*, 193 F. Supp. 3d 313 (S.D.N.Y. 2016) (applying four-factor test in assessing motion

for 23(f) stay). In an abundance of caution, Plaintiffs will address all factors from each test.

Under either test, a 23(f) stay will only rarely issue. *See, e.g.*, *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 n.8 (11th Cir. 2000) ("Rule 23(f) contemplates that in most cases discovery (at the very least, merits discovery) will continue notwithstanding the pendency of an appeal of the class certification order."); *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 835 (7th Cir. 1999) ("Because stays will be infrequent, interlocutory appeals under Rule 23(f) should not unduly retard the pace of litigation."). "[P]arties should not view Rule 23(f) as a vehicle to delay proceedings in the district court. . . . [and therefore] a stay will not issue unless the likelihood of error on the part of the district court tips the balance of hardships in favor of the party seeking the stay." *In re Sumitomo Copper Litig.*, 262 F.3d 134, 140 (2d Cir. 2001); *see also Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1713 n.9 (2017) ("Rule 23(f) avoids delay not only by limiting class-certification appeals to those permitted by the federal courts of appeals, but also by specifying that "[a]n appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.'" (quoting Fed. R. Civ. P. 23(f)).

**A.      Defendants Will Suffer No Cognizable Injury in the Absence of a Stay**

The entirety of the harm identified by the Defendants is the burden and cost of litigating this case, in particular of participating in discovery.[3] As a threshold matter, it

---

[3] Defendants' brief contains exactly one mention of "irreparable harm"—in their recitation of the relevant factors. At no point did they argue, much less establish, that denial of their motion would cause them

is not clear that the burden and cost of litigation can *ever* constitute irreparable harm. "[T]he expense and annoyance of litigation is part of the social burden of living under government. . . . Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (rejecting request to review FTC complaint before conclusion of administrative proceedings, notwithstanding substantial burden of defending those proceedings); *see also Daniels v. City of New York*, 138 F. Supp. 2d 562, 564 (S.D.N.Y. 2001) (denying stay pending appeal of class certification,[4] rejecting as "without merit" movant's claim that it would suffer irreparable harm in the form of a "significant waste of time and resources if the class certification order is reversed on appeal" because "litigation costs do not rise to the level of irreparable injury" (citations and internal quotation marks omitted)).

Given that 23(f) stays only issue rarely, it stands to reason that litigation burdens ordinarily cannot constitute irreparable harm in this context—if they did, nearly every case would be stayed pending review. "In every case, a party may have to expend money on discovery that could later be deemed unnecessary if the case is reversed on appeal, but that fact does not transform such expenses into irreparable harm." *Charlot v. Ecolab, Inc.*, No. 18-10528 (KM) (MAH), 2020 WL 1546439, at *3 (D.N.J. Apr. 1, 2020) (denying 23(f) stay, noting that "[l]itigation costs as such generally [do] not rise to the

---

irreparable harm. Nevertheless, Plaintiffs analyze Defendants' claimed prejudice under the irreparable harm rubric because that is, as Defendants recognized, the relevant standard.
[4] For reasons that are not clear, the motion was not styled as a 23(f) motion but rather a motion to stay pursuant to Fed. R. App. P. 8(a)(1). The court applied the four-factor test that generally applies to requests for a stay pending appeal. *Id.* at 563-64.

level of irreparable harm") (citation and internal quotation marks omitted). The Court therefore should not credit Defendants' claim that litigation burdens weigh in favor of a stay.

In a similar vein, Defendants argue that "requiring discovery before jurisdictional and procedural infirmities are resolved prejudices" them. ECF No. 61 at 5. Defendants' argument ignores the fact that this Court already considered these purported infirmities and held that no such infirmities exist. If simple disagreement with the District Court's resolution of legal or factual issues is all it takes to justify a stay pending appeal, a stay would accompany every appeal, in the 23(f) context or otherwise.

An additional problem with Defendants' reliance on the costs and burdens of discovery is that, even if they are successful on appeal, any discovery that takes place in the interim will not have been for naught. The Defendants' petition to the Second Circuit claims two general bases for reversal: (1) the named Plaintiffs lack standing; and (2) this Court did not engage in the rigorous analysis Rule 23 requires, leaving certain merits questions for later determination. For the reasons outlined in Part C, both arguments lack merit. But even if Defendants were to succeed on one or both claims, the case would go on. In the first instance, Plaintiffs would move to file an amended complaint naming new class representatives, and in the second, the Second Circuit would likely remand the case for additional analysis and possibly an evidentiary hearing. In either case, much, if not all, of the discovery that took place in the interim would remain relevant and potentially useful to this Court.

Finally, Defendants suggest that the burden on them will be heightened in light of the ongoing COVID-19 crisis—yet they fail to take seriously the acute and serious risks

8

that infectious disease poses to Plaintiffs, as described more fully below. The COVID-19 pandemic lays bare the danger of untreatable (in the case of COVID-19) or untreated (in the case of chronic HCV) infectious disease in a carceral setting. In addition, individuals like Plaintiffs who have underlying chronic health conditions are at heightened risk of severe complications and even death from COVID-19, making it yet more urgent that Plaintiffs' claims are heard and vindicated without additional delay. The fact that Defendants—and, it goes unsaid in Defendants' brief, Plaintiffs—are struggling in the midst of a global pandemic weighs in favor of denying a stay.

**B.     Plaintiffs' Suffering Will Be Exacerbated If a Stay Issues**

Defendants make several perplexing claims in support of their claim that a stay will not be unfair or prejudicial to Plaintiffs. First, they claim that Plaintiffs will not be prejudiced because the parties have treated this litigation as stayed and "have not been litigating any aspect of this lawsuit." ECF No. 61 at 3-4. This claim is neither true nor an argument in favor of Defendants' new request for a stay. As recounted above, Plaintiffs have been actively seeking resolution of individual class members' claims and have by no means treated this litigation as stayed while awaiting this Court's resolution of the several pending motions. Between October 2019 and February 2020, Plaintiffs' counsel sent Defendants' counsel letters on behalf of 15 individuals in DOC custody seeking treatment for their chronic HCV. *See supra* p. 4. To Plaintiffs' knowledge, these pleas have largely fallen on deaf ears. *Id.*

When Defendants withhold or deny treatment to inmates with chronic HCV, those inmates' infections worsen. Prompt resolution of Plaintiffs' claims is necessary to

avoid the risk of permanent harm or worse. Inmate J.A.'s case is a distressing illustration. Just before he was incarcerated under the legal custody of the DOC, J.A. was working with a physician at a community health center to begin treatment for his chronic HCV. *See* J.A. Decl. at ¶ 4.[5] At that time, the physician told J.A. that he did not suffer from extreme liver scarring. *See id*. Upon his incarceration, the DOC started testing J.A. for HCV. Despite positive lab results indicating J.A. had HCV, DOC medical personnel told J.A. that he did not qualify for treatment because his "levels were too low" and "his body was fighting off the hep-C virus by itself." *See id*. at ¶¶ 6–7. Defendant delayed providing J.A. with curative medication. Over the next two years, J.A. made repeated requests for treatment by filing grievances and appeals. *See id*. at ¶ 8. In this time, J.A. suffered several HCV-related symptoms, such as fatigue, nausea, yellowing eyes, and abdominal pain. *See id*. at ¶ 9. By the end of this period, another lab test indicated that J.A. had developed liver cirrhosis. *See id*. at ¶ 11. It was only *after* these lab results that Defendant began providing J.A. with DAA treatment. *See id*. at ¶ 12. But by this point, the damage was done. Cirrhosis is associated with increased rates of liver cancer, increased need for liver transplant, and increased risk of death. ECF No. 2-7 at ¶ 21. Once an individual is cirrhotic, treatment does not eliminate the risk of liver cancer and that individual must continue to be screened for liver cancer every 6 months, for the rest of their life. ECF No. 2-7 at ¶ 45. The scarring to J.A.'s liver is quite possibly irreversible.

---

[5] Because this declaration contains personal health information and otherwise personally identifying information, Plaintiffs will file it separately along with a Motion for Leave to File Under Seal.

Where plaintiffs are seeking only money damages, a stay may be appropriate; any harm from delay can be remedied by awarding interest or otherwise adjusting the damage award. *Cf. Pena v. Taylor Farms Pac., Inc.*, No. 2:13-cv-01282-KJM-AC, 2015 WL 5103157, at *6 (E.D. Cal. Aug. 31, 2015) (finding balance of hardships favored granting stay where "[t]he plaintiffs seek only damages, not an injunction, and appropriate relief can offset any harm arising from delayed monetary payments"). But Plaintiffs here are seeking injunctive relief to put an end to DOC's unconstitutional practices and, with it, their own worsening illnesses.

Second, Defendants suggest that the requested stay "will merely continue the *status quo* as it existed before the entry of the order certifying the class action." ECF No. 61 at 4. Even if the status quo were a functionally stayed case, the certification of the class and denial of the motion to dismiss are major steps in the lifetime of the case; there is simply no reason that the state of play before those orders should remain the state of play after them. The parties were awaiting and now have received the Court's answers on the many questions raised in Plaintiffs' motion for class certification and Defendants' motions to dismiss, stay, and strike. It is time for this case to move forward.

Third, Defendants suggest that participation in the Court's Early Neutral Evaluation process may be "impossible if the identification of legal and factual issues are in the hands of the Circuit Court." ECF No. 61 at 5. But a major reason that parties engage in settlement discussions is to resolve a case in the face of uncertainty about how the Court might resolve outstanding legal and factual issues. That calculus is no different when some of those issues may be in the hands of an appellate court.

Finally, Defendants suggest that Plaintiffs will not be prejudiced by a stay because they can, in the interim, "individually make use of the grievance process and, if unsatisfied, still have individual access to the courts via review in the Superior Courts." ECF No. 61 at 6-7. The problems with this claim are manifold: Plaintiffs have been availing themselves—without success—of the grievance process; Defendants' practice for treating chronic HCV is unconstitutional, making the grievance process an exercise in futility; recourse to individual actions both ignores the existence of the class and robs Plaintiffs of the benefit of class certification; and forcing Plaintiffs into numerous individual actions rather than one class action undermines the judicial efficiency and litigation burden concerns that Defendants claim a stay would address. The proposal flies in the very face of the Court's class certification Order.

In sum, a stay of all proceedings in this Court would inflict serious and irreparable harm on Plaintiffs, while inflicting no cognizable harm on Defendants. The balance of equities tips sharply in favor of denying the motion to stay and permitting Plaintiffs to pursue their claims.

**C.     Defendants Have Failed to Establish a Likelihood of Success on Appeal**

In concert with this Opposition, Plaintiffs are today filing an Answer to the Defendants' Rule 23(f) Petition in the United States Court of Appeals for the Second Circuit setting forth the reasons that the Petition should not be granted. For the Court's benefit, this Answer will also be filed today in this matter, as a supplement to this Opposition, and Plaintiffs refer the Court to that brief.

In summary, the Petition sets forth no argument that satisfies the Second Circuit's criteria for Rule 23(f) review, as articulated in *Sumitomo*, 262 F.3d 134. Instead, the Petition presents a series of case-specific, fact-intensive assertions that have already been considered and rejected by this Court. The Petition conjures a purported circuit split in an effort to manufacture a novel question of law, renews its effort from this Court to conflate standing and mootness issues, and misinterprets the purpose of the Second Circuit's death knell protection, among other infirmities catalogued in the Answer. The *Sumitomo* Court, upon delineating the characteristics of a successful Rule 23(f) petition, concluded that those standards "will rarely be met." *Id.* at 140. The Petition does nothing to show that this is one of those rare cases. The only conclusion is that the Petitioners view Rule 23(f) as another opportunity to delay the litigation. The Court should not countenance further efforts on that score.

### D.     The Public Interest

The public interest also weighs in favor a denying Defendants' motion. Broadly speaking, the public has an interest in vindication of constitutional claims without delay. Enjoining an unconstitutional regulatory scheme "serves the public interest . . . because the Government does not have an interest in the unconstitutional enforcement of a law." *Amarin Pharma, Inc. v. FDA*, 119 F. Supp. 3d 196, 237 (S.D.N.Y. 2015) (citation and internal quotation mark omitted); *V.W. by & through Williams v. Conway*, 236 F. Supp. 3d 554, 589 (N.D.N.Y. 2017) ("[Public] interest is particularly strong where the rights to be vindicated are constitutional in nature."); *see also Petrobas Sec. Litig.*, 193 F. Supp. 3d at 318 (denying motion for 23(f) stay because, among other reasons, "the public

13

interest is served by the speedy and effective administration of justice, not least in cases of such obvious public interest as this one").

More specifically, the public interest is served by the effective treatment of a highly infectious disease that kills more than 20,000 people in the United States each year. *See* ECF 2-7 at ¶ 12. Since those cured are no longer able to transmit the virus, treatment with DAAs reduces the incident rate of new HCV infections. *Id.* at ¶ 43. The public interest would be disserved by further delay of adjudication of Plaintiffs' claims.

## Conclusion

Every relevant factor weighs against granting Defendants' motion to stay proceedings in this Court. Defendants should not be permitted to further delay Plaintiffs' ability to vindicate their right to effective—and constitutionally required—treatment to cure their chronic HCV. The Court should deny the motion to stay.


James M. Diaz
Lia Ernst
ACLU Foundation of Vermont
90 Main Street, Suite 200
Montpelier, VT 05602
(802) 223-6304
jdiaz@acluvt.org
lernst@acluvt.org

Counsel for Plaintiffs
Dated: April 23, 2020

James Valente
Costello, Valente & Gentry, P.C.
51 Putney Road
Brattleboro, VT 05301
(802) 257-5533
valente@cvglawoffice.com

Kevin Costello
(admitted pro hac vice)
Center for Health Law & Policy Innovation
Harvard Law School
1585 Massachusetts Avenue
Cambridge, MA 02138
(617) 496-0901
kcostello@law.harvard.edu

15

**United States District Court**
**District of Vermont**

| | |
|---|---|
| RICHARD WEST and JOSEPH BRUYETTE, individually and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL SMITH, Vermont Secretary of Human Services, JANE DOE, Vermont Deputy Secretary of Human Services, JAMES BAKER, Interim Vermont Department of Corrections Commissioner, JOHN DOE, Vermont Department of Corrections Health Services Director, in their official capacities, and CENTURION OF VERMONT, LLC,<br><br>Defendants. | No. 02:19-cv-00081-WKS |

Certificate of Service

      I hereby certify that on April 23, 2020, I electronically filed the above using the CM/ECF system, which will send notification of such filing to counsel for all parties.


/s/ Lia Ernst
ACLU Foundation of Vermont
90 Main Street, Suite 200
Montpelier, VT 05602
(802) 223-6304
lernst@acluvt.org