## UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

| | |
|---|---|
| RICHARD WEST and JOSEPH BRUYETTE, individual and on behalf of a class of similarly situated persons;<br><br>             Plaintiffs,<br><br>    v.<br><br>MICHAEL SMITH, in his official capacity only, as Vermont Secretary of Human Services; JANE DOE, Vermont Deputy Secretary of Human Services; JAMES BAKER, Vermont Department of Corrections Interim Commissioner; JOHN DOE, Vermont Department of Corrections Health Services Director, in their official capacities; and VITALCORE HEALTH STRATEGIES, LLC,<br><br>          Defendants. | Case No. 2:19-cv-00181-WKS<br><br><br><br><br>**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT AND APPROVAL OF CLASS NOTICE** |

Defendants and the certified representatives of the Plaintiff class, Richard West and Joseph Bruyette ("Class Representatives"), respectfully submit this brief in support of their Joint Motion to approve the class settlement reflected in the Settlement Agreement. *See* Ex. 1 to the Declaration of Kevin Costello in Support of the Parties' Joint Motion for Preliminary Approval of Settlement Agreement and Approval of Class Notice ("Costello Decl.") (filed contemporaneously with this motion).

## I.    BACKGROUND AND PROCEDURAL HISTORY

Chronic Hepatitis C Virus ("HCV") is a communicable, potentially life-threatening viral infection that Vermont has identified as having "one of the greatest disease burdens across the

state."[1]   According to the Centers for Disease Control, "[u]p to 1 in 5 people with hepatitis C develop cirrhosis, and hepatitis C is the number one cause of liver transplants."[2]   Correctional settings are a particular locus of the disease, with the CDC estimating in 2013 that up to one-third of the 2.2 million people in jails in prison were infected with hepatitis C.[3]   In 2011, the FDA first approved a type of direct-acting antiviral medication ("DAA") that consists of a daily pill taken for 8-12 weeks.[4]   Successful DAA treatment effectively cures HCV.[5]   The FDA has approved DAA regimens for nearly all patients with chronic HCV, regardless of disease stage or severity.[6]

This matter concerns allegations, denied by Defendants, concerning the policies and practices of the Vermont Department of Corrections ("DOC") and its medical contractors for approving DAA treatment for hepatitis C.  The Complaint was filed on behalf of a putative class on May 21, 2019 by Plaintiffs Richard West and Joseph Bruyette, who were incarcerated individuals in DOC custody.  ECF No. 1.  The Plaintiffs alleged that they were denied DAA treatment for their chronic HCV contrary to accepted medical standards of care.  *Id*.

The Complaint followed a pre-litigation public records request in which the state of Vermont produced thousands of pages of government documents concerning DOC's policies and practices with regard to the testing, diagnosis, and treatment of chronic HCV.  ECF No. 1-1.  The Complaint, which sought declaratory and injunctive relief, alleged that Defendants – various state government officials and state contractors who were responsible for the medical care of Vermont

---

[1] *See* Centers for Disease Control, "Viral Hepatitis," *available at* https://perma.cc/Y7FK-SXNF; ECF No. 1-2 at PRR 2106.
[2] *See* Centers for Disease Control, "Viral Hepatitis and Liver Cancer," *available at* https://perma.cc/7L3Y-9D56.
[3] *See* Centers for Disease Control, "Hepatitis C & Incarceration," ECF No. 2-9.
[4] Marie-Louise Vachon & Douglas T. Dieterich, *The Era of Direct-acting Antivirals Has Begun: The Beginning of the End for HCV?*, 31 Seminars in Liver Disease 399, 399 (2011).
[5] *See* Centers for Disease Control, "CDC Recommendations for Hepatitis C Screening Among Adults — United States, 2020" *available at* https://perma.cc/E5ZN-YLEP.
[6] *See, e.g.,* FDA label for Sovaldi (sofosbuvir), *available at* https://perma.cc/LZ37-HS2Q ("No dosage adjustment of Sovaldi is required for patients with mild, moderate or severe hepatic impairment.")

inmates – failed to provide lifesaving DAA medication to hundreds of inmates with chronic HCV infections.  ECF Nos. 1 & 96.  The Plaintiffs alleged that the Defendants' policies and practices in this regard constituted deliberate indifference to the serious medical needs of individuals in their custody who are infected with chronic HCV.  *Id*.  Defendants continue to deny this and maintain that at all times the State has treated inmates according to the community standard for such treatments. Shortly after filing the Complaint, the Plaintiffs moved to certify the class.  ECF No. 2.

On July 22, 2019, Defendants moved to dismiss the case for lack of standing and mootness. ECF No. 34.  On March 30, 2020, the Court denied the Defendants' motion and granted the Plaintiffs' motion for class certification under Fed. R. Civ. P. 23(b)(2).  ECF No. 56.  The certified class is composed of all persons:

(1) who are in Department of Corrections custody;

(2) who have been incarcerated for at least 14 days or have completed their initial healthcare screening, whichever occurs first;

(3) who have been diagnosed with chronic HCV and are candidates for DAA treatment under the medical standard of care; and

(4) for whom DAA treatment has been or will be denied or withheld based on considerations that deviate from the medical standard of care.

*See* ECF No. 56.

On April 13, 2020, Defendants filed in the Second Circuit Court of Appeals a petition for interlocutory review under Rule 23(f).  ECF No. 62-1.  Following the denial of that petition, the Parties began to engage in preliminary discovery proceedings, and the Court set a discovery schedule by Order on October 9, 2020.  ECF No. 94.  To date, the Parties have exchanged

thousands of pages of documents, proffered interrogatories and received first responses, and conducted two depositions pursuant to Fed. R. Civ. P. 30(b)(6).  Costello Decl. ¶ 3.

On July 1, 2020, Defendant VitalCore Health Strategies, LLC ("VitalCore") took over the administering of healthcare services, including HCV treatment, to those incarcerated in DOC facilities. ECF No. 96. Plaintiffs filed an Amended Complaint on November 10, 2020 naming VitalCore a Defendant. ECF No. 96.

### A.  VitalCore's January 1, 2021 Policy

On January 1, 2021, Defendant VitalCore produced a written copy of its updated policy regarding the treatment of individuals with HCV in DOC custody.  *See* Ex. 2 to Costello Decl. The VitalCore policy ensures DAA treatment for sentenced class members who will remain in confinement for more than 4 to 6 months and ensures DOC will not categorically limit DAA treatment for inmates based on disease severity, disciplinary record, or substance use.  In addition, the VitalCore policy includes the following provisions for its HCV treatment program:

- All individuals entering the Vermont DOC system are offered opt-out screening for HCV upon admission.

- All sentenced inmates with chronic HCV in DOC custody will be treated as soon as possible if the course of treatment can be completed during confinement, determined to be 4 to 6 months.

- Any "especially compromised" inmates will be referred immediately to a medical provider for assessment and care, even if the inmate is likely to be held in confinement for less than 4 to 6 months.  The policy specifically accounts for follow-up care to continue in the community in situations where a patient is released in the middle of treatment.

- Individuals with HCV, but without cirrhosis, will be treated by prescribers within the Vermont DOC system. Those with cirrhosis will be referred for treatment to an academic medical center for care.

- Individuals entering the Vermont DOC system already receiving DAA treatment will be maintained on treatment unless there is a clinical indication to discontinue.

Following the Defendants' production of the VitalCore Policy on January 1, 2021, the Parties entered into settlement negotiations.

## II.    SETTLEMENT AGREEMENT

The Settlement Agreement, attached as Ex. 1 to Costello Decl., is the product of the Parties' arm's-length negotiations over the past three months and would resolve all class claims in this action.

### A.    Defendants' Responsibilities

Under the settlement agreement, Defendants agree not to categorically limit access to DAA treatment for sentenced inmates who will remain in confinement for more than 4 to 6 months based on disease severity, disciplinary record, or substance use. Ex. 1 to Costello Decl. § 6.  The tenets of the January 1, 2021 VitalCore policy are to remain in effect for at least two years. In addition, Defendants agree to:

- Continue screening individuals for HCV upon admission into DOC custody;

- Notify class members of the class settlement as described further below; and

- Provide class counsel with treatment and screening data for two years, from January 2021, which allows class counsel to monitor the implementation of the terms of the Agreement, as described further below.

The proposed settlement extends through January 1, 2023, following final approval by the Court.  During the proposed settlement term, the Parties request that the Court retain jurisdiction solely to enforce the agreement.

**B.    Class Notice**

The Court has the authority to order class notice in a class settlement under Fed. R. Civ. P. 23(c)(2).  Class notice provides an avenue through which absent class members may be informed of the current litigation and be notified of the changes to DOC's HCV treatment policy.  The proposed class notice, attached as Ex. 3 to Costello Decl., advises class members of the updated VitalCore policy, explains their potential eligibility for DAA treatment, and outlines the process for inquiring about treatment.  In the Settlement Agreement, DOC agrees to distribute the notice to the prison mailbox of the members of the class, as well as post a version of the class notice on the prison video systems, notice boards, and other public announcement areas inside each Department of Corrections incarcerative facility.  Ex. 1 to Costello Decl. § 5.  In addition, the Commissioner of the Vermont Department of Corrections agrees to make both the class notice and VitalCore Policy publicly available on DOC's website.

Counsel for the class will also create a webpage[7] that includes information about this action, the certified class, and the proposed settlement, including how to contact counsel for the class.  Ex. 1 to Costello Decl. § 9.

**C.    Public Documents and Treatment Monitoring**

Dating back to January 1, 2021, and then every four months throughout the settlement period following this Court's Preliminary Approval Order, Defendants will provide class counsel with regular reports on individuals in DOC custody.  Ex. 1 to Costello Decl. § 7.  The information

---

[7] *See* www.hepcvtdoc.com (website to be created following preliminary approval).

in the reports will provide insight to the HCV treatment practices of the Defendants and help Plaintiffs monitor the implementation of the Policy.  The reports will specify the monthly number of individuals who are infected with HCV as well as those who are receiving DAA treatment. They will also contain information on the number of individuals who have completed treatment, including whether the treatment was successful, and information on those who have HCV but have not been approved for HCV treatment.

For a period of two years, beginning on February 1, 2021, Defendants also agree to provide class counsel with any VitalCore policy updates related to HCV treatment and any official documents expressing formal changes in HCV treatment protocol.

### D.    Release of Claims

In return for the benefits under the Settlement Agreement, the named Plaintiffs and the class will release claims within the scope of the *West* complaint for injunctive and declaratory relief under federal law relating to DOC's previous denial of DAA treatment.  Ex. 1 to Costello Decl. § 10.  The agreement does not include the release of individual class member claims for money damages.

### E.    Dispute Resolution and Enforcement

The Parties request that the Court retain jurisdiction over the contractual enforcement of the Settlement Agreement, as a part of the Court's Final Approval Order, for any proceeding commencing on or before February 1, 2023.  Ex. 1 to Costello Decl. § 3.

Any disputes arising during the settlement term will be first addressed by the Parties, who will attempt to resolve any disagreements amongst themselves and obtain a resolution that addresses any perceived deficiency.  If the Parties are unable to resolve a conflict amongst themselves, either party may seek enforcement of the contractual terms of the agreement by filing

a motion to reopen the Action.  Either party may seek to challenge the other party's compliance with the Settlement Agreement.  Ex. 1 to Costello Decl. § 3.

Individual class members remain free to pursue individual claims within the scope of the *West* complaint, either through the DOC administrative grievance process or through the dispute resolution process described in the Settlement Agreement.  The Parties ask the Court to refer any class member who files a *pro se* motion to enforce the Settlement Agreement to class counsel for dispute resolution.  Ex. 1 to Costello Decl. § 3.

### F.    Attorney Fees and Costs

The Defendants will pay class counsel's reasonable costs, as approved by the Court following a fairness hearing.  Ex. 1 to Costello Decl. § 4.  The Parties have agreed that the Plaintiffs will seek, and the Defendants will not oppose, costs in the amount of three thousand dollars ($3,000).  Ex. 1 to Costello Decl. § 4.  Each party will bear their own attorney's fees.

### III.   LEGAL STANDARD

The claims of a certified class may only be settled with the Court's approval.  Fed. R. Civ. P. 23(e).  Prior to granting preliminary approval, the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not a product of collusion."  *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).  There is a "strong judicial policy in favor of settlement," particularly in class actions.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (citing *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)).

Approval of a class action settlement involves a two-step process: a preliminary approval review and a final fairness hearing.  *Caballero v. Senior Health Partners, Inc.,* No. 16 CV 0326 (CLP), 2018 U.S. Dist. LEXIS 151059, at *30 (E.D.N.Y. Sept. 4, 2018).  At the preliminary approval stage, courts in the Second Circuit have historically relied on the factors outlined in *City*

*of Detroit v. Grinnell Corp.* to determine whether a proposed settlement was fair, reasonable, and adequate.[8] 495 F.2d 448, 463 (2d Cir. 1974); *see also Wal-Mart Stores*, 396 F.3d at 117. *But see Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 n.7 (E.D.N.Y. 2006) (questioning the practicality of applying the *Grinnell* factors at the preliminary approval stage). In December 2018, new amendments to Fed. R. Civ. P. Rule 23(e) took effect and altered the standards that guide a court's preliminary approval analysis. Courts must now consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's-length;
> (C) the relief provided for the class is adequate, taking into account:
>> a.  the costs, risks, and delay of trial and appeal;
>> b.  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
>> c.  the terms of any proposed award of attorney's fees, including timing of payment; and
>> d.  any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Some courts have understood these new considerations to "supplement rather than displace these '*Grinnell*' factors." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). To account for the inevitable overlap between the two tests, courts should first consider the Rule 23(e)(2) factors, and then consider the additional *Grinnell* factors not addressed by Rule 23(e)(2). *In re Payment Card Interchange Fee Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).

---

[8] The *Grinnell* factors ask courts to consider: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.* 495 F.2d 448, 463 (2d Cir. 1974) *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43 (2d Cir. 2000)

At the preliminary approval stage, courts assess whether the parties have shown that the court will "likely" be able to grant final approval. *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment ("The decision to give notice of a proposed settlement to the class . . . should be based on a solid record supporting the conclusion that the proposed settlement will *likely* earn final approval after notice and an opportunity to object.") (emphasis added); *see also In re Payment Card Interchange Fee Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 28 n. 21 ("It appears that a 'likelihood standard' now guides a district court's analysis of whether to grant preliminary approval."). As such, the proposed settlement should be preliminarily approved where it is "likely" to satisfy both the criteria of Rule 23(e)(2) and the supplemental *Grinnell* factors.

If the Court preliminarily approves the Settlement Agreement, notice of the preliminary settlement is ordered to be sent to the class members and a fairness hearing date is set. Following the fairness hearing, the Court determines whether to approve the Settlement Agreement by applying all applicable criteria found in Rule 23(e)(2) and in the *Grinnell* factors.

## IV. ARGUMENT

### A. The Class Has Been Adequately Represented.

Class counsel and the Class Representatives have consistently advocated for the interests of the class and have adequately represented the class throughout this litigation. Class counsel have significant experience practicing civil rights litigation in federal court, including trial and settlements.[9] This Court has already considered the experience of the class counsel and found them to be adequate representatives, citing their "significant experience with civil rights litigation on behalf of vulnerable populations, some of which has involved class action representation."

---

[9] Examples of prior civil rights litigation include the following: Class Action Complaint, *Coleman v. Wilson,* No. 1:20-cv-00847 (W. D. Tex. Aug. 13, 2020), ECF No.1; Joint Motion for Final Approval of Settlement Agreement, *Ryan v. Bimestefer*, No: 17-CV-00904-KLM (D. Colo. Feb. 19, 2019), ECF No. 72; and Complaint (Class Action), *B.E. and A.R. v. Teeter*, No. 2:16-cv-227 (W. D. Wash. Feb. 16, 2016), ECF No. 1.

ECF. No. 56.  Counsel thus have appropriate experience to evaluate the benefits of the Settlement

Agreement and determine whether settlement or further litigation is in the best interest of the class.

The Class Representatives have vigorously pursued the claims of the class and held the

interests of the class apart from and equal to their own.  *Denney v. Deutsche Bank AG*, 443 F.3d

253, 268 (2d Cir. 2006).  Shortly after filing the Complaint, both Class Representatives were

granted the opportunity to receive DAA treatment for their chronic HCV.  ECF No. 56.  Plaintiff

Bruyette began treatment on July 15, 2019.  ECF No. 31.  Plaintiff West was released from DOC

custody on June 23, 2019 and received treatment in the community.  ECF No. 31.  Throughout this

litigation, the Class Representatives have vigorously pursued the interests of the class and continue

to fairly and adequately protect the class's interests.

### B.    The Settlement Was Negotiated at Arm's-Length.

To determine whether a proposed settlement is likely fair, courts look to the negotiation

process leading to the settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  The

negotiation process is fair if it resulted from "arm's-length negotiations and that plaintiffs' counsel

have possessed the experience and ability, and have engaged in the discovery, necessary to

effective representation of the class's interests." *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir.

1982).  There is a strong presumption of fairness for settlements reached in arm's-length

negotiations between experienced counsel after engaging in meaningful discovery. *Wal-Mart

Stores, Inc.*, 396 F.3d at 116 (citing *Manual for Complex Litigation, Third*, § 30.42 (1995)).

This proposed settlement achieves the lion's share of the Plaintiffs' goals in initiating this

litigation, and is the product of arm's-length, good-faith negotiations.  The Parties have vigorously

advocated for and pursued their respective positions throughout the case and in settlement

negotiations.  Each side has dedicated substantial time and resources to this case.  Since filing the

initial complaint on May 21, 2019, the Parties have expended hundreds of attorney and staff hours, engaged in motion practice, and scheduled, served, and began the process of discovery. *See* Costello Decl. ¶ 4. Upon commencing settlement negotiations in January 2021, the Parties worked through difficult disagreements, and each side dedicated extensive resources to advance their clients' positions. *Id.* At each step, the Parties preserved their right to continue litigation should they prove unable to reach an agreement. *Id.* These adversarial circumstances surrounding the Parties' negotiations support a finding of fairness.

### C.   The Class Relief is Adequate.

Treating and curbing HCV infections for class members is at the heart of this litigation, and the class relief provided in this Settlement Agreement adequately addresses these issues. To determine whether a proposed settlement is likely adequate, the Court must take into account: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (3) the terms of any proposed award of attorney's fees, including timing of payment; and (4) any agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C). Because the class is seeking injunctive and declaratory relief, adequate class relief will be achieved through the Defendants' adherence to the updated HCV treatment policy and practice as defined in the Settlement Agreement. The proposed settlement ensures that the Defendants will not categorically deny treatment to class members based on their disease severity, disciplinary record, or substance use. Reporting measures are to be put in place to ensure that these policies are made meaningful in practice. The agreement also maintains expanded HCV screening and treatment to the class.

In addition to delivering necessary relief to the class, the Settlement Agreement provides an avenue through which HCV infection rates may be curbed more broadly.  Vermont's unified incarceration system houses both pre-trial detainees and sentenced individuals in the same facilities.[10]  Prisoners who may have HCV, but remain undiagnosed, may unknowingly transmit the disease to others either in prison or upon release.[11]  HCV screening and treatment in the prison population has been shown to markedly reduce the transmission of the disease—and deaths related to the disease—outside prisons.[12]  Treating and curbing HCV infections for class members will provide necessary and adequate relief for the members of the class and beyond.

**1.    The costs, risks, and delay of trial and appeal support a finding of adequacy.**

The Parties have weighed the benefits of the Settlement Agreement against continued litigation, and have entered into settlement negotiations after achieving a thorough understanding of the case following months of discovery and fact-finding.  *Wal-Mart Stores, Inc.*, 396 F.3d at 118.  Preliminary approval of the Settlement Agreement would minimize the expense of litigation, avoid the expenditure of judicial resources, and ensure injured parties' recoveries without the time, expense, and inconvenience of further litigation.  *Allen v. Dairy Farmers of Am., Inc*., No. 5:09-cv-230, 2011 U.S. Dist. LEXIS 85753, at *17-18 (D. Vt. Aug. 3, 2011).  The agreement locks in immediate relief to the class, rather than waiting months, if not years, for trial and possible appeal.

---

[10] *See* Message from Commissioner Baker, *available at* https://perma.cc/J9N4-ZL3W ("The VTDOC is a unified correctional agency.")
[11] *See* Centers for Disease Control, "Hepatitis C & Incarceration," ECF No. 2-9.
[12] *See* Tianhua He, M.D. et al., *Prevention of Hepatitis C by Screening and Treatment in U.S. Prisons*, Annals of Internal Medicine (Nov. 24, 2015), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4854298/ (finding that 80% of the "liver-related deaths" averted by testing and treating the incarcerated population for chronic HCV would have occurred outside of prisons); *see also* AASLD & IDSA, *HCV Testing and Treatment in Correctional Settings*, HCV Guidance: Recommendations for Testing, Managing, and Treating Hepatitis C (Nov. 6, 2019), available at https://www.hcvguidelines.org/unique-populations/correctional ("Given the high prevalence of HCV among persons in the US correctional system, the success of the national HCV elimination effort will depend on identifying chronically infected individuals in jails and prisons, linking these persons to medical care for management, and providing access to antiviral treatment.").

Upon final approval, the Settlement Agreement will achieve most of the relief sought in the initial complaint. It will also have the immediate effect of resolving the remaining claims in this litigation, allow the Plaintiffs to monitor the Defendants' HCV treatment practice, and allow Defendants to continue providing HCV treatment to most class members consistent with the community standard of care.

In addition, all Parties have engaged in "sufficient investigation of the facts" to enable the Court to approve the settlement. *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (citing *Plummer v. Chemical Bank*, 668 F.2d 654, 660 (2d Cir. 1982)). Before filing their complaint, the Plaintiffs conducted an exhaustive public records review of the Defendants and key issues in this action. ECF No. 1-1. This action has now been ongoing for more than two years and, in addition to the Plaintiffs' pre-litigation investigation, has included a fully briefed class certification motion and months of informal settlement negotiations between the Parties. Costello Decl. ¶ 3. The Parties have conducted two Rule 30(b)(6) depositions of DOC administrators, and have exchanged thousands of pages of written discovery. *Id.* The Plaintiffs have also consulted with expert witnesses, including a dialogue that resulted in a filed declaration from Dr. Stacey Trooskin**,** a medical doctor whose career has focused on issues relating to the testing and treatment of HCV. ECF. No. 2-7. The discovery and fact-gathering has resulted in a high level of familiarity with the case and affords the Plaintiffs the knowledge to consider the benefits and risks of settlement and continued litigation.

## 2.    Class relief is delivered universally.

Because the class is seeking injunctive and declaratory relief, the settlement need not include an opt-out of the settlement provisions under Fed. R. Civ. P. 23(b)(2). The proposed settlement ensures that all individuals in DOC custody, and who will be held in confinement for

at least four to six months, will not be categorically excluded from HCV treatment due to their disease severity, disciplinary record, or substance use during the settlement time period. Ex. 1 to Costello Decl.  Any "especially compromised" individuals will be eligible for DAA treatment regardless of their remaining length of confinement.  *Id.*  Per the terms of the Settlement Agreement, class members will receive notice informing them of the change in DOC's treatment policy.  *Id.*

The Settlement Agreement contemplates this Court retaining jurisdiction for the purpose of enforcing the terms of the Settlement Agreement.  Ex. 1 to Costello Decl. §§ 1.6-1.7. Either Party may contest the other Party's compliance with the Settlement Agreement by first raising issue with the other Party. Ex. 1 to Costello Decl. § 3. If those efforts are unsuccessful, either Party may file a motion to reopen the action to seek enforcement of the Settlement Agreement terms on or before February 1, 2023. *Id.*

### 3.    The proposed terms of awarding attorney fees are adequate.

The proposed Settlement Agreement provides for the payment of class counsel's costs in the amount of three thousand dollars ($3,000). Ex. 1 to Costello Decl. § 4.  Each Party will bear its own attorney's fees. *Id.*  These outcomes were reached after arm's-length negotiations following the Parties' agreements of the Settlement Agreement's substantive terms.

### D.    The Settlement Agreement Treats Class Members Equitably.

To determine whether class members are treated equitably relative to one another, courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.  The Settlement Agreement uniformly applies class relief

notwithstanding the varying degrees of injury class members may claim. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 47 (finding equitable treatment where "the scope of the release applies uniformly to putative class members, and does not appear to affect the apportionment of the relief to class members"). While all class members allege the common injury of inadequate care, some class members have been diagnosed and await treatment, and others await both diagnosis and treatment. The Settlement Agreement is designed to treat all class members equitably by enacting an HCV treatment policy that applies across the entire class, grants substantial relief in the form sought in the Complaint, and provides for monitoring and enforcement to ensure that the Defendants' future conduct lives up to the promises reflected in the Settlement Agreement. Ex. 1 to Costello Decl. §§ 3, 7.

Members of the class include any inmate who is, or will be, diagnosed with chronic HCV during the life of the Settlement Agreement. *See* Ex. 1 to Costello Decl. at 1 n.1. Class members are continually identified through the Settlement Agreement's opt-out screening provision at prisoner transfer, intake, and physical examination. All class members who are newly diagnosed with chronic HCV will remain eligible for treatment according to policy under the terms of the proposed Settlement Agreement, and all class members will continue to access to DAAs according to policy by:

- Ensuring treatment eligibility is determined without consideration of an individual's disease severity, disciplinary record, or substance use.

- Ensuring that sentenced inmates with at least four to six months remaining in custody can receive DAA treatment.

Ex. 1 to Costello Decl. § 6.  Under the Settlement Agreement, DOC agrees to adhere to the VitalCore policy detailed *supra*, which will meaningfully and tangibly improve HCV treatment for class members who previously would not have been considered for treatment.

For a small subset of class members, relief may be more difficult to access due to the uncertain nature of their confinement.  Class members with an indeterminate length of incarceration in DOC custody – either because they are a person being held in pretrial detainment or because they are a sentenced inmate whose release date is complicated by some variety of factors – may continue to encounter barriers to treatment.  The Defendants justify the continuation of this policy based on the desire to avoid having a class member released during the midst of a course of treatment, which can last 8 weeks or more.  To safeguard class members' ability to access relief, any "especially compromised" individual who is denied treatment may avail themselves of the dispute resolution provisions of the Settlement Agreement, detailed in Ex. 1 to Costello Decl. § 3.

### E.    The Settlement Agreement Satisfies the Remaining *Grinnell* Factors.

The *Grinnell* factors not addressed by Rule 23(e)(2) are: "the ability of the defendants to withstand a greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *In re Payment Card Interchange Fee Merch. Disc. Antitrust Litig.*, 330 F.R.D.  29 n.22.  These factors are largely targeted at Rule 23(b)(3) agreements that result in a financial settlement.  The Plaintiffs brought this action seeking declaratory and injunctive relief related to the Defendants' HCV treatment policy and practice. The Settlement Agreement achieves similar ends to the relief requested in the initial Complaint because VitalCore's HCV policy reflects that most class members are to be provided HCV

treatment consistent with the community standard.  The Defendants' adherence the VitalCore HCV policy provides reasonable relief in light of any further judgement that might be incurred by continuing this action.    Furthermore, a proposed settlement "falls within the range of reasonableness when compared to the best possible outcome."  *Davis v. Cent. Vt. Pub. Serv. Corp.*, 2012 U.S. Dist. LEXIS 139186, 25 (D. Vt. Sep. 27, 2012).  The Settlement Agreement requires the Defendants to maintain their updated HCV treatment policy through January 1, 2023; ensures class members are not categorically denied treatment due to disease severity, disciplinary record, or substance use; and allows for the Plaintiffs to regularly monitor class members' access to treatment.  The proposed settlement provides a reasonable outcome for the class because it ensures the Defendants' policies and practices regarding HCV treatment are reflective of the relief sought in the initial Complaint.  Further litigation would postpone monitoring and oversight of the HCV policy currently in effect, and would unnecessarily subject the class to the uncertainties attendant to a jury trial.

**F.     The Proposed Form of Notice is Sufficient to Inform Class Members of the Proposed Settlement and Provide Opportunity for Comment.**

As part of its preliminary approval of the settlement, the Court should direct notice of the settlement to the Plaintiff class.  Fed. R. Civ. P. 23(e)(1).  Such notice must be directed "in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Attached to the Costello Decl. as Exhibit 3 is the Parties' proposed form of notice. The notice provides class members effective notice of a fairness hearing on the proposed settlement and provides class members the opportunity to comment on the Settlement Agreement.

The proposed notice is accessible and can be "understood by the average class member." *Wal-Mart Stores, Inc.*, 396 F.3d at 114.  To ensure notice is available to class members through a variety of channels, class counsel will create a webpage that includes, in plain language, the

following: (a) information on the action, (b) identification of the class, (c) a summary of the proposed settlement derived from the Notice, (d) a timeline and schedule of events, including deadlines for supporting or objecting to the settlement agreement, (e) how to contact class counsel for additional information, (f) settlement documents, and (g) updates.  Ex. 1 to Costello Decl. § 9.

In addition, the Settlement Agreement requires DOC to provide notice directly to class members in their individual mailboxes, on notice boards throughout DOC facilities, and on a website.  Ex. 1 to Costello Decl. § 1.3; *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings").  Given the DOC's superior access to class members and the relatively small number of people in the class, the Parties are confident that class notice will accessible and adequate for class members.

### G.  The Parties Request a Hearing on the Fairness, Reasonableness, and Adequacy of the Settlement Agreement.

Because the Settlement Agreement would bind all class members, "the Court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  For the reasons explained above, the Court should find that the proposed settlement agreement is fair, reasonable, and adequate.  The Parties respectfully request the Court to set a hearing on this preliminary approval motion as soon as the Court's schedule permits.  Should the Court grant this motion, it should also set a final approval hearing on a date following the conclusion of the class notice period, which the Parties have proposed should conclude 60 days following the execution of class notice.

### IV.  CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court (1) preliminarily approve their negotiated proposed Settlement Agreement, attached as Exhibit 1, to resolve all

remaining claims in this action, (2) approve their proposed form of notice of settlement to class

members, attached as Exhibit 3 to the Costello Decl. and (3) set a date for a hearing on the fairness,

adequacy, and reasonableness of the proposed settlement agreement on or after June 14, 2021.

DATED:  June 11, 2021

/s/ Kevin Costello
Kevin Costello
Director of Litigation
Center for Health Law & Policy Innovation
Harvard Law School
617-496-0901
kcostello@law.harvard.edu

James M. Diaz
Lia Ernst
ACLU Foundation of Vermont
90 Main Street, Suite 200
Montpelier, VT 05602
(802) 223-6304
jdiaz@acluvt.org
lernst@acluvt.org

James Valente
Costello, Valente & Gentry, P.C.
51 Putney Road
Brattleboro, VT 05301
(802) 257-5533
valente@cvglawoffice.com

Attorneys for Plaintiffs and Class

THOMAS J. DONOVAN, JR.
ATTORNEY GENERAL

BY: /s/ Jared Bianchi
Jared Bianchi
Assistant Attorney General
280 State Drive, HC2N
Waterbury, VT 05671-2080
(802) 241-0194
jared.bianchi@vermont.gov
Robert.LaRose@vermont.gov

*Attorney for Defendants*
*Secretary Mike Smith*
*Commissioner James Baker*


*/s/ Pamela Eaton*
Pamela Eaton
Stephen Soule
Paul Frank + Collins P.C.
P.O. Box 1307
Burlington, VT 05402-1307
802.658.2311
ssoule@pfclaw.com
peaton@pfclaw.com

*Attorneys for*
*VitalCore Health Strategies, LLC*


## CERTIFICATE OF SERVICE & CONFERENCE

I hereby certify that the Parties have conferred in advance of filing this motion.  I also hereby certify that on June 11, 2021, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system.  The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to all counsel of record.


*s/ Kevin Costello*
Kevin Costello
(admitted *pro hac vice*)
Center for Health Law & Policy Innovation
Harvard Law School
1585 Massachusetts Avenue
Cambridge, MA 02138
(617) 496-0901
kcostello@law.harvard.edu

Dated:  June 11, 2021