# *West v. Smith*

United States District Court for the District of Vermont

Case No. 02:19-cv-00081-WKS

# Declaration of Kevin Costello
# June 11, 2021
# Exhibit 1

# SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

*Richard West and Joseph Bruyette, individually and on behalf of a class of similarly situated persons, v. Michael Smith, in his official capacity only, as Vermont Secretary of Human Services; Jane Doe, Vermont Deputy Secretary of Human Services; James Baker, Vermont Department of Corrections Interim Commissioner; John Doe, Vermont Department of Corrections Health Services Director, in their official capacities; and VitalCore Health Strategies, LLC.*

*United States District Court for the District of Vermont, Case No. 2:19-cv-00181-WKS*

This Settlement Agreement and Release of All Claims (the "Settlement Agreement") is made as of May 14, 2021 (notwithstanding the actual date of execution) by and between Plaintiffs, Richard West and Joseph Bruyette, on their own behalf and on behalf of a class of similarly situated individuals, and Defendants Michael Smith, in his official capacity only, as Vermont Secretary of Human Services, Jane Doe, Vermont Deputy Secretary of Human Services, James Baker, Vermont Department of Corrections Interim Commissioner, John Doe, Vermont Department of Corrections Health Services Director, in their official capacities, and VitalCore Health Strategies, LLC ("VitalCore"). Collectively, Plaintiffs and Defendants shall be referred to herein as the "Parties." This Settlement Agreement is a full expression of the agreements between the Parties.

## RECITALS

WHEREAS, Plaintiffs filed a Complaint against Defendants and their predecessors on May 21, 2019. The action—*West v. Smith*, Case No. 2:19-cv-00181-WKS (the "Action")—was brought in the United States District Court for the District of Vermont (the "Court"), and sought relief both on Plaintiffs' own behalf and on behalf of a class of similarly situated individuals ("Class").[1]

WHEREAS, Plaintiffs asserted various allegations within their Complaint arising out of Defendants' policies and practices of making Direct Acting Antiviral ["DAA"] treatment available to the Class to treat individuals infected with chronic Hepatitis C Virus ("HCV"). Based on these allegations, Plaintiffs' Amended Complaint raised the following legal claim on behalf of a putative class:

> Defendants' acts and omissions in their respective official capacities have failed to provide adequate medical care according to the clearly established medical standard of care. This deviation from the standard of care constitutes deliberate indifference to the serious medical needs of Plaintiffs and other similarly situated inmates infected with chronic HCV, thereby establishing a violation of U.S. Const.

---

[1] The term "Class" shall be defined to mean the class—as certified in the Action by the Court in its order dated March 30, 2020—defined as follows:

[A]ll persons:
(1)     who are in Department of Corrections custody;
(2)     who have been incarcerated for at least 14 days or have completed their initial healthcare screening, whichever occurs first;
(3)     who have been diagnosed with chronic HCV and are candidates for DAA treatment under the current standard of care; and
(4)     for whom DAA treatment has been or will be denied or withheld based on considerations that deviate from the medical standard of care.

amend. VIII and XIV, for which 42 U.S.C. § 1983 provides declaratory, equitable, mandamus, and legal remedies.

WHEREAS, Defendants have maintained and continue to maintain that the State of Vermont has always provided care for inmates who have Hepatitis C in a manner consistent with the established medical standard of care and have done so in a manner exceeding the care provided for inmates in other states.

WHEREAS, on March 30, 2020, the Court denied the Defendants' motion to dismiss, with respect to the legal claim recounted above.

WHEREAS, on March 30, 2020, the Court granted Plaintiffs' Motion for Class Certification, and certified the Class under Federal Rule of Civil Procedure 23(a), (b)(2). The Court appointed Plaintiffs Richard West and Joseph Bruyette as class representatives, and appointed Jay Diaz and Lia Ernst of ACLU of Vermont, Kevin Costello of Harvard Law School Center for Health Law and Policy Innovation, and James Valente of Costello, Valente & Gentry, P.C. as class counsel ("Class Counsel").

WHEREAS, on July 1, 2020, as a result of the termination of its contract with the Vermont Department of Corrections to provide health care services, then-Defendant Centurion of Vermont, LLC, moved to dismiss all claims, and WHEREAS by Order dated August 24, 2020, the Court dismissed all claims against Centurion of Vermont, LLC, for lack of jurisdiction, as more fully set out in the Court's record.

WHEREAS, on November 9, 2020, Plaintiffs filed an Amended Complaint that, among other things, added VitalCore as a party Defendant, and made certain claims against VitalCore.

WHEREAS, because the Named Plaintiffs had received DAA treatment and/or been released from DOC custody, the Amended Complaint removed these individual allegations, which had been present in the Complaint: "Plaintiffs are excluded from appropriate medical treatment by reason of their disability in violation of The Americans with Disabilities Act (ADA) and its subsequent amendments, which prohibit public entities from discriminating against persons with disabilities in their programs, services, and activities. 42 U.S.C. §§ 12131-12134."

WHEREAS, VitalCore became the contracted medical provider with the Vermont Department of Corrections on July 1, 2020 and thereafter implemented a new practice for the treatment of individuals infected with Hepatitis C in Vermont Department of Corrections facilities.

WHEREAS, effective January 1, 2021, VitalCore issued a new policy for the treatment of individuals infected with Hepatitis C in Vermont Department of Corrections facilities, which is attached as Exhibit A to this Agreement.

WHEREAS, the Parties, in good faith, have agreed to avoid the expense and time of litigation, to resolve all of their differences by this Settlement Agreement, and that this Settlement Agreement fully resolves all of the claims and differences between the Parties.

THEREFORE, on condition of the promises and covenants contained in this Settlement Agreement, the adequacy and sufficiency of which are hereby acknowledged, the following is agreed:

## COURT APPROVAL AND JURISDICTION

1. **COURT APPROVAL OF SETTLEMENT AGREEMENT REQUIRED:** The promises and covenants contemplated under this Settlement Agreement must be approved by the Court, as provided herein and pursuant to Fed. R. Civ. P. 23. Pursuant to Fed. R. Civ. P. 23, the Parties agree to jointly recommend the following procedure to the Court for approval of the terms of this Settlement Agreement:

   1.1 *Joint Motion for Approval of Notice.* Class Counsel and counsel for Defendant shall jointly move for an order from the Court that approves of the content of the proposed Notice and deems the proposed manner in which notice shall be provided to the Class to be reasonable ("Preliminary Approval Order").

   1.2 *Preliminary Approval Order.* The Court will enter a Preliminary Approval Order detailing its findings as to whether the content of the proposed Class Notice, appended to the Settlement Agreement as Exhibit B and detailed in Part 5, below ("Class Notice"), is appropriate for the Class, and whether the manner in which the Notice is to be sent to the identified members of the Class is reasonable. Assuming the Court approves of both the content of the Class Notice and the manner in which Class Notice is to be sent, then the Court shall set a date for the Fairness Hearing.

   1.3 *Approved Notice Sent to Class Members.* Defendants, on or before the date set by the Court, will deliver the approved Notice described in Section 5 to the prison mailbox of the members of the Class. In addition, Plaintiffs' counsel shall publish the Notice on the website described in Section 9. In addition, the Defendants will post a version of the Notice on prison system video systems, notice boards, and other public announcement areas inside each Department of Corrections incarcerative facility. Because of the ever-changing population meeting the definition of the class, Defendants will generate a list of persons in the Class within five business days of the day that the Court enters a preliminary approval order and shall issue the approved notice to persons on this list within 30 days of generating the Class list. The fact that notice may miss any particular individual will not constitute failure or breach of the underlying agreement as to the member or the class as a whole.

   1.4 *Fairness Hearing.* On the date set in the Preliminary Approval Order, the Court will hold a Fairness Hearing to determine whether the Settlement Agreement proposed by the Parties is fair, reasonable, and adequate, and whether the Settlement Agreement is binding on all Class members.

   1.5 *Final Approval Order.* The Court will enter a Final Approval Order detailing its findings as to whether the Settlement Agreement is fair, reasonable, and adequate, and whether the Settlement Agreement is binding on all Class members. Assuming the Court finds that the Settlement Agreement is fair, reasonable and adequate, and that it is binding on all Class members, then the Parties shall promptly execute the approved Settlement Agreement within seven [7] days of the Fairness Hearing.

   1.6 *Joint Motion for Dismissal; Dismissal of the Action.* Within 14 days of the full execution of this Settlement Agreement, the Parties shall file a Joint Motion for

        Dismissal and [Proposed] Order of Dismissal. In filing the Joint Motion and [Proposed] Order, it is the intention of the Parties that the Court retain jurisdiction only for the purpose of enforcing the contractual terms of this Settlement Agreement for the entire duration of this Settlement Agreement.

1.7    *Order Dismissing Action*. The Court will enter an order administratively closing the Action in *West v. Smith*, Case No. 2:19-cv-00181-WKS, in accordance with Federal Rules of Civil Procedure 41(a)(2) and 23(e) and expressly state therein that it retains jurisdiction over the Action only for the purpose of enforcing the terms of this Settlement Agreement. The Court shall retain jurisdiction only for proceedings to enforce the terms of this Settlement Agreement commenced by class counsel for disputes arising on or before January 1, 2023. In the event proceedings to enforce the terms of this Settlement Agreement for disputes arising before January 1, 2023 are ongoing at that time, the Court shall dismiss the Action with prejudice upon resolution of such proceedings. Any such proceedings must be commenced on or before February 1, 2023.

2.    **COURT REJECTION:** If the Court declines to enter either the Preliminary Approval Order, as described in Section 1.2, or a Final Approval Order, as described in Section 1.5, or an Order Dismissing Action, as described in Section 1.7, then this Settlement Agreement shall automatically terminate, and thereupon shall become null and void and the Action—*West v. Smith*, Case No. 2:19-cv-00181-WKS—shall revert to its status as January 29, 2021, as described in Section 2.4. The Court must finally approve the Settlement Agreement for it to be effective and binding upon the Parties. There shall be no modifications or amendments to the promises and covenants contemplated under this Settlement Agreement, unless such modifications or amendments are expressly agreed to, in writing, by the Parties.

2.1    *Court of Appeals Reversal*. If the Second Circuit Court of Appeals reverses the Court's Final Approval Order, as described in Section 1.5, then, provided that no appeal is then pending from such a ruling, this Settlement Agreement shall automatically terminate and thereupon become null and void, on the 31st day after issuance of the order referenced in this section.

2.2    *United States Supreme Court Reversal*. If the United States Supreme Court reverses the Court's Final Approval Order, as described in Section 1.5, then, provided that no appeal is then pending from such a ruling, this Settlement Agreement shall automatically terminate and thereupon become null and void, on the 31st day after issuance of the order referenced in this section.

2.3    *Pending Appeal*. If an appeal is pending of an order declining to approve the Settlement Agreement, this Settlement Agreement shall not be terminated until final resolution or dismissal of any such appeal, except by written agreement of the Parties.

2.4    *Reversion of Action*. If the Court declines to enter either the Preliminary Approval Order, as described in Section 1.2, or a Final Approval Order, as described in Section 1.5, or an Order Dismissing Action, as described in Section 1.7, the Action shall revert to its status as of January 29, 2021, and the Parties shall request a Status Conference with the Court to resume proceedings.

3. **DISPUTE RESOLUTION PROCEDURE; BREACH OF CONTRACT:** In the event that either Party perceives a deficiency in Plaintiffs' or Defendants' compliance with their respective Obligations under this Settlement Agreement, the Party that perceives a deficiency shall first notify the other Party of its concerns. If the Party alleged to be non-compliant is unable to provide the necessary information to demonstrate compliance with its obligations under this Settlement Agreement, the Parties shall attempt to obtain agreement amongst themselves as to the steps necessary to satisfy the alleged deficiency. If the Parties are unable to obtain agreement amongst themselves as to how to satisfy the alleged deficiency, either Party may seek to challenge the other Party's compliance with this Settlement Agreement in Court by filing a motion to reopen the Action to seek enforcement of the contractual terms of this Settlement Agreement.

The Parties agree that the Court shall retain jurisdiction over the contractual enforcement of this Settlement Agreement. However, this Settlement Agreement is not, nor is it intended to be, a consent decree. The Parties agree jointly to recommend that the Court retain jurisdiction over the contractual enforcement of this Settlement Agreement as part of its Final Approval Order, as described in Section 1.5, and its Order Dismissing Action, as described in Section 1.7. The Court shall retain jurisdiction over the Action only for the purpose of enforcing the terms of this Settlement Agreement. The Court shall retain jurisdiction only for proceedings to enforce the terms of this Settlement Agreement commenced on or before February 1, 2023.

Notwithstanding any part of this Section, individual Class members shall remain free to pursue claims within the scope of the *West* complaint either through the Department of Corrections administrative grievance process (as described herein and in Section 6.2 and Section 6.3) or through the dispute resolution process described herein. The Parties jointly agree to ask the Court to refer any Class member who files a *pro se* motion to enforce this Agreement to Plaintiffs' counsel for dispute resolution as described herein. Complaints by or on behalf of inmates that fall outside the scope of the *West* complaint are not affected by this Agreement and shall remain subject to the grievance system presently in place in Vermont correctional facilities.

## OBLIGATIONS OF DEFENDANTS

*4.* **PAYMENTS:** Each party shall bear its own attorneys' fees. Defendants do not agree that Plaintiffs have or would substantially prevail should this matter go to a decision on the merits. However, in light of the additional costs that would be incurred if this matter was litigated to completion, and only in order to preserve public funds, Defendants jointly agree to reimburse Plaintiffs for verified incurred costs (i.e., documented costs incurred by Class Counsel) in an amount not to exceed $ 3,000 in total.

5. **CLASS NOTICE:** On or before the date set by the Court, Defendants, at their expense, shall cause the Class Notice to be delivered to all individuals within the Class. Defendants may not provide Notice to individuals within the Class who have already been approved for treatment with DAAs. The Parties agree that the Notice will include: (a) a copy of the January 1, 2021 VitalCore policy; (b) a statement that any previously denied Class members who remain interested in DAA treatment should seek a consultation with their medical provider regarding whether DAA treatment is still appropriate for them; and (c) a statement informing the Class that the normal authorization process described in the January 1, 2021 VitalCore policy will apply to any request submitted seeking DAA treatment.

    5.1    Subject to the Preliminary Approval Order as described in Section 1.2, a draft of the Notice is attached to this Settlement Agreement as Exhibit B.

    5.2    The Commissioner of the Department of Corrections agrees to make the Class Notice and VitalCore Policy publicly available on the Department of Corrections' website.

6.    **VITALCORE POLICY:** The Defendants agree to follow the January 1, 2021 VitalCore policy for the treatment of HCV for incarcerated individuals in Vermont Department of Corrections custody.[2] Defendants agree that, for a period of two years beginning on January 1, 2021, they will not categorically limit access to DAA treatment for sentenced inmates who will remain in confinement for more than 4-6 months, based on disease severity, disciplinary record or substance use. This provision shall be subject to the following exceptions:

    6.1    *Exceptions*: In the event medical standards and guidance regarding DAA treatment were to change, or in the event that federal or state law relevant to the claims in this case were to change, the Defendant may authorize changes to its criteria for DAA treatment consistent with such changes. If such revisions are made before January 1, 2023, then the Commissioner of the Vermont Department of Corrections shall provide Class Counsel with written notice 30 days before the changes are to take effect. Such advance notice requirement shall be waived if the new treatment policy is intended to provide greater curative treatment accessibility than is available at that time. In such instances, Class Counsel shall be provided written notice within 21 days after the changes take effect. In addition, the Parties agree that while disease severity may not be used as a basis to deny treatment to sentenced inmates who will remain in confinement for more than 4-6 months, disease severity may be clinically considered for the purposes of expanding treatment options for Class members, such as monitoring individuals with cirrhosis for the development of liver disease or cancer. Furthermore, nothing in this Settlement Agreement prohibits Defendant VitalCore from implementing immediate changes as necessary to conform to any and all safety guidance issued by the federal Food and Drug Administration.

    6.2    *Disputes*: The Parties agree that any dispute about the applicability of this Section 6 and any exceptions detailed herein shall be resolved as set forth in Section 3, *supra*.

    6.3    *Appeal Rights*: Nothing herein shall be construed to limit or affect a Class member's right to pursue review of individual medical treatment decisions utilizing the grievance system in Vermont Department of Corrections facilities and that grievance system as it may be changed from time to time during the effective dates of this Agreement.

7.    **PUBLIC DOCUMENTS REGARDING DAA TREATMENT:**

    7.1    For a term of two years, to begin on February 1, 2021, and only for documents first

---

[2] The term custody as used in this agreement shall mean: In the custody of the Vermont Commissioner of Corrections and confined to a correctional facility within and operated by the state of Vermont or, if outside of Vermont, pursuant to a contract with the State of Vermont.

published after this date, Defendants agree to provide Jay Diaz of ACLU Vermont with the following public documents, only to the extent that such documents directly relate to the treatment of Hepatitis C Virus with DAAs: (1) Any written VitalCore policy updates disseminated to providers; (2) Official documents expressing formal changes to Hepatitis C treatment protocol.

7.2 Defendants also agree to send Plaintiffs regular reports on individuals in the custody of Vermont Department of Corrections in a manner consistent with Defendant's obligations as a Covered Entity under the Health Insurance Portability and Accountability Act (HIPAA), specifically 45 C.F.R. § 164.514. The information provided will reflect the following: (1) The number of individuals each month who are infected with Hepatitis C in Vermont Department of Corrections custody; (2) the number of individuals each month who are currently approved for and the number of individuals each month who are engaged in DAA treatment; (3) the number of individuals who completed DAA treatment in the reporting period, along with an indication of whether the treatment was successful or unsuccessful; (4) the number of individuals who are infected with Hepatitis C in Vermont Department of Corrections custody but who have not been approved for DAA treatment, along with an indication of the reason.

7.3 Defendants shall provide all information set forth in this Section 7 and its subparts by providing the ACLU of Vermont with an e-mail, FTP, or disc containing the relevant information every four months. The first such report shall be sent within 30 days of the Preliminary Approval Order entered in this matter, and shall reflect information dating back to at least January 1, 2021. The second such report shall be due on May 31, 2021, and shall contain information concerning each month since those included in the first report through April 2021. The third such report shall be due on September 30, 2021, and shall contain information concerning May, June, July, and August, 2021. The fourth such report shall be due on January 31, 2021, and shall contain information concerning September, October, November, and December, 2021. The fifth such report shall be due on May 31, 2022, and shall contain information concerning January, February, March, and April, 2022. The sixth such report shall be due on September 30, 2022, and shall contain information concerning May, June, July, and August, 2022. The seventh and final such report shall be due on January 31, 2023, and shall contain information concerning September, October, November, and December, 2022.

8. **CONDITIONS:** The Settlement Award Payments referenced in Section 4 of this Settlement Agreement are expressly contingent upon, and dependent upon, final approval of this Settlement Agreement by the Court. The Settlement Award Payments will not be made unless and until the Court has approved the Settlement Agreement for Plaintiffs, individually, and on behalf of the Class.

## OBLIGATIONS OF PLAINTIFFS

9. **PLAINTIFFS' CLASS NOTICE:** Class Counsel shall create a webpage[3] that includes

---

[3] Defendant makes no admissions, warranties, or assurances with regard to the representations made on Class Counsel's webpage, as described below.

the following material for the Class to access:

    9.1    A brief description of the Action—*West v. Smith*, Case No. 2:19-cv-00181-WKS;

    9.2    Identification of the Class;

    9.3    A summary of the proposed settlement derived from the Notice;

    9.4    A timeline and schedule of events, including deadlines for supporting or objecting to this Settlement Agreement;

    9.5    How to contact Class Counsel for additional information;

    9.6    Settlement documents, or links to documents, including:

        i.    The Notice; and

        ii.    All Court Orders;

    9.7    Updates. The webpage created by Class Counsel shall be updated as the following information become available:

        i.    Motion(s), including any objections and Plaintiffs' response to any objections; and

        ii.    Frequently asked questions.

        iii.    Payment information as reflected in Section 4 of this Settlement Agreement.

    10.    **RELEASE OF CLAIMS:** Plaintiffs Richard West and Joseph Bruyette, on behalf of themselves and the Class (membership in which is to be determined as of no later than December 31, 2022), their heirs, executors and administrators, successors and assigns, absolutely and unconditionally release and forever discharge all Defendants, the State of Vermont, its agencies, departments (including, but not limited to, the Vermont Department of Corrections and Agency of Human Services), officers (including all present or formerly named defendants), agents, employees, attorneys, contractors (including all present and formerly named defendants, and insurers, successors and assigns, and VitalCore, and all of their employees, officers, directors, agents, contractors, insurers, successors, assigns and attorneys), from any and all claims, causes of action, liabilities, expenses, and costs, which Plaintiffs brought or could have brought in *West v. Smith*, Case No. 2:19-cv-00181-WKS, whether such claims are now known or come to be known in the future. Plaintiffs' release explicitly applies to, but is not limited to, any claims that were brought or could have been brought pursuant to 42 U.S.C. § 1983, or for injunctive or declaratory relief under federal law. This release shall be binding on Plaintiffs, the Class, and all of their agents, representatives, heirs, beneficiaries, assigns, subrogees, and attorneys. Plaintiffs' release does not include a release of individual claims by Class members, if any, for money damages under federal law or Vermont law.

    11.    **UNKNOWN FACTS:** Plaintiffs acknowledge that they may hereafter discover facts different from, or in addition to, those which they now know or believe to be true with respect to the

claims released hereby, and they agree that the release shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof. The provisions of any state, local, federal or territorial law or statute providing in substance that releases shall not extend to claims, demands, injuries or damages which are unknown or unsuspected to exist at the time, to the person executing such release, are expressly waived.

12. **APPROVAL OF SETTLEMENT AGREEMENT BY COURT:** Plaintiffs acknowledge that it is their obligation to obtain approval of the Settlement Agreement from the Court for Plaintiffs Richard West and Joseph Bruyette, individually and on behalf of the Class. Plaintiffs understand and agree that Defendants' agreement to enter into the Settlement Agreement, or any part thereof, is contingent upon approval of this Settlement Agreement for each of the Plaintiffs, individually and on behalf of the Class, by the Court.

13. **OBJECTIONS TO THE CLASS SETTLEMENT AGREEMENT:**

   13.1. The notice form sent to potential members of the Settlement Class shall inform them of the right to object to this Settlement Agreement. If a person wishes to have the Court consider such an objection, they must file with the Court and mail to counsel for the Parties a written objection, along with any supporting documentation that the person wishes the Court to consider, by no later than 21 calendar days from the Initial Notice Delivery date. If such objection is submitted and overruled by the Court, the objecting member of the Settlement Class shall remain fully bound by the terms of this Class Settlement Agreement so long as it is granted final approval by the Court.

   13.2. The Parties shall submit any responses to objections no later than 45 calendar days after the Initial Notice Delivery date.

   13.3. Any Settlement Class member who does not appear individually or through counsel and who does not challenge or comment upon the fairness and adequacy of this Class Settlement Agreement or Class Counsel's petition for attorneys' fees and expenses shall waive and forfeit any and all rights to appear separately or object. All members of the Settlement Class shall be bound by all the terms of this Class Settlement Agreement and by all proceedings, orders and judgments in this Action.

## GENERAL PROVISIONS

14. **DISMISSAL:** The Parties agree that this Settlement Agreement shall resolve each and every issue raised in the Action—*West v. Smith*, Case No. 2:19-cv-00181-WKS. Upon the final date described in this Settlement Agreement, this case shall be dismissed with prejudice.

15. **CONSIDERATION:** Plaintiffs acknowledge the receipt of good and sufficient consideration for this Settlement Agreement. Plaintiffs hereby release any claim or action upon which they may seek to overturn this Settlement Agreement, including but not limited to any claim of insufficiency of consideration in whole, or in part, as to any party, regardless of the source of the consideration.

16. **NO ADMISSION OF LIABILITY:** It is expressly understood and agreed that this Settlement Agreement is in full settlement and satisfaction of the disputed claims, that any injuries or

damages and the legal liability therefore are disputed and denied, and that the Settlement Award Payments given in this Settlement Agreement are based solely on the economic consideration of conservation of public money, and is not to be construed as an admission of liability by Defendants, by whom liability is expressly denied. The Parties expressly agree that neither Party is a prevailing party in this Action with regard to an award of attorney fees or for any other purpose.

17. **PUBLIC RECORDS REQUIREMENTS:** Plaintiffs understand and agree that the State of Vermont and its departments, agencies, and employees are bound by applicable public disclosure laws, as presently or subsequently amended, and that the State of Vermont, its departments, agencies, or employees may be required to disclose this Settlement Agreement in its entirety if requested to do so under such statutes. Plaintiffs agree that neither the State of Vermont, nor its departments, agencies, nor employees, shall be liable for the release of public records under such statutes.

18. **INTEGRATION:** This Settlement Agreement constitutes the entire agreement of the Parties regarding the subject matter hereof. The terms of this Settlement Agreement are contractual in nature and are not mere recitals. As such, the Parties understand, acknowledge and agree that this Settlement Agreement is fully integrated and supersedes all previous oral or written agreements of the Parties.

19. **BINDING EFFECT:** This Settlement Agreement shall inure to the benefit of, and be binding upon, the heirs, successors, successors-in-interest, assigns, administrators, affiliates, predecessors, and their past and present officers, directors, agents, and employees, and legal representatives of the Parties and any third-party beneficiaries.

20. **CONTRACTUAL AGREEMENT:** Nothing in this Settlement Agreement shall be construed as a consent decree. This Settlement Agreement is a purely contractual agreement entered into by the Parties.

21. **GOVERNING LAW:** This Settlement Agreement is entered into in Vermont, and shall be governed by the laws of the State of Vermont.

22. **HEADINGS:** The headings used in this Settlement Agreement are for the convenience of the Parties only. As such, these headings shall not have any legal effect whatsoever or, in any other way alter or modify the meaning or interpretation of this Settlement Agreement.

23. **SEVERABILITY:** The provisions of this Settlement Agreement are not severable.

24. **AMENDMENT:** Before entry of any Preliminary Approval Order, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties. Following entry of any Preliminary Approval Order, this Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Parties and as approved by the Court.

25. **WAIVER:** The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving Party. The waiver by any Party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

26. **ADVICE OF COUNSEL:** This Settlement Agreement has been entered into voluntarily by the Parties, without duress and after Plaintiffs, individually and as representatives of the Class, have had the opportunity to consult with legal counsel of their choosing, read and understand this Settlement Agreement, and obtained full knowledge of its legal significance.

Plaintiffs further understand and agree that, individually and as representatives of the Class, this Settlement Agreement shall be forever binding and that no cancellation, recession, or modification of, or release from the terms of this Settlement Agreement shall be made based upon any mistake of fact or of law.

27. **EXECUTION IN COUNTERPARTS:** This Settlement Agreement may be executed in counterparts, or with signatures obtained via facsimile or electronic mail transmission, each of which shall have full force and effect upon execution by all Parties to this Settlement Agreement, but which together shall constitute a single instrument.

In witness thereof, Plaintiffs have signed this Settlement Agreement on behalf of themselves and on behalf of the Class on the date set forth adjacent to their signatures.

**CAUTION:**

**READ THIS BEFORE SIGNING. THIS IS A RELEASE OF YOUR CLAIMS.**

**PLAINTIFFS:**

_____     Date:_____

RICHARD WEST

Individually and on behalf of the Class

_____     Date:_____

JOSEPH BRUYETTE

Individually and on behalf of the Class

*West, et al. v. Smith, et al.*

In witness thereof, Plaintiffs have signed this Settlement Agreement on behalf of themselves and on behalf of the Class on the date set forth adjacent to their signatures.

## CAUTION:

**READ THIS BEFORE SIGNING. THIS IS A RELEASE OF YOUR CLAIMS.**

**PLAINTIFFS:**

_____     Date: 06-09-21

RICHARD WEST

Individually and on behalf of the Class

_____     Date:_____

JOSEPH BRUYETTE

Individually and on behalf of the Class

11

In witness thereof, Plaintiffs have signed this Settlement Agreement on behalf of themselves and on behalf of the Class on the date set forth adjacent to their signatures.

**CAUTION:**

**READ THIS BEFORE SIGNING. THIS IS A RELEASE OF YOUR CLAIMS.**

**PLAINTIFFS:**

_____     Date:_____

RICHARD WEST

Individually and on behalf of the Class

*/s/ Joseph Bruyette*     Date: June 4, 2021

JOSEPH BRUYETTE

Individually and on behalf of the Class

*West, et al. v. Smith, et al.*

FOR DEFENDANT: _____  Date: 6-10-21

MICHAEL SMITH (or designee)

Vermont Secretary of Human Services

_____  Date: 6/11/21

James Baker (or designee)

Vermont Department of Corrections Commissioner

_____  Date:_____

Viola Riggin, BHSA, CHSA, CCE

(or designee)

Chief Executive Officer On behalf of

VitalCore Health Strategies, LLC

11

**FOR DEFENDANT:**

_____  Date:_____

MICHAEL SMITH (or designee)

Vermont Secretary of Human Services




_____  Date:_____

James Baker (or designee)

Vermont Department of Corrections Commissioner




*[signature: Viola Riggin]*
_____  Date:\_\_\_6-8-2021_____

Viola Riggin, BHSA, CHSA, CCE

(or designee)

Chief Executive Officer On behalf of

VitalCore Health Strategies, LLC

11

**APPROVED AS TO FORM:**

ACLU OF VERMONT

HARVARD LAW SCHOOL CENTER FOR HEALTH LAW AND POLICY INNOVATION
COSTELLO, VALENTE & GENTRY, P.C.

Attorneys for the Plaintiffs and the Class

T.J. DONOVAN
ATTORNEY GENERAL

Jared Bianchi

Assistant Attorney General Robert LaRose

Senior Assistant Attorney General

Attorneys for Vermont Defendants

Pamela Eaton

Stephen Soule

Attorneys for VitalCore Health Strategies, LLC

11

**APPROVED AS TO FORM:**

ACLU OF VERMONT

HARVARD LAW SCHOOL CENTER FOR HEALTH LAW AND POLICY INNOVATION
COSTELLO, VALENTE & GENTRY, P.C.

_____

Attorneys for the Plaintiffs and the Class

T.J. DONOVAN
ATTORNEY GENERAL

_____

Jared Bianchi

Assistant Attorney General Robert LaRose

Senior Assistant Attorney General

Attorneys for Vermont Defendants

*pamela peaton*
_____

Pamela Eaton

Stephen Soule

Attorneys for VitalCore Health Strategies, LLC

11