UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

RICHARD WEST and JOSEPH          )
BRUYETTE, individually and       )
on behalf of a class of          )
similarly situated persons,      )
                                 )
        Plaintiffs,              )
                                 )
        v.                       )          Case No. 2:19-cv-81
                                 )
JENNEY SAMUELSON, in her         )
official capacity only, as       )
Vermont Secretary of Human       )
Services; TODD DALOZ, Vermont    )
Deputy Secretary of Human        )
Services; NICHOLAS DEML,         )
Vermont Department of            )
Corrections Commissioner;        )
MAX TITUS, Vermont Department    )
of Corrections Health            )
Services Director, in their      )
official capacities; and         )
VITALCORE HEALTH STRATEGIES,     )
LLC,                             )
                                 )
        Defendants.              )

**OPINION AND ORDER**

Pending before the Court is Plaintiffs' motion to enforce a settlement agreement ("Settlement Agreement") entered into as a result of this litigation. The Court retained jurisdiction over disputes arising out of the Settlement Agreement. Plaintiffs now report several such disputes, some of which have been resolved since the motion to enforce was filed. The remainder have now been fully briefed. For the reasons set forth below, the motion to enforce is **granted in part and denied in part**.

## Background

Plaintiffs brought this action in 2019 on behalf of a putative class, claiming that Vermont inmates with chronic Hepatitis C Virus ("HCV") were not receiving appropriate medical treatment.  HCV is a highly communicable disease that scars the liver and can cause other harm, including cancer, hypertension, and death.  Plaintiffs submit that the standard of care for HCV treatment is Direct-Acting Antiviral ("DAA") therapy.

Plaintiffs filed this lawsuit alleging that Defendants were denying DAA treatment to hundreds of inmates suffering from chronic HCV.  On October 28, 2021, the Court granted final approval of a Settlement Agreement, in which the Vermont Department of Corrections ("DOC") and its medical provider, VitalCore, agreed to expand treatment access to incarcerated patients.  On October 28, 2022, Plaintiffs moved for enforcement of the Settlement Agreement, claiming that certain inmates were not receiving adequate treatment and that Defendants were otherwise failing to abide by the Settlement Agreement in several respects.  That motion is now before the Court.

The parties have resolved some of the issues raised by the motion.  The following issues remain: (1) whether Defendants are violating the Settlement Agreement with respect to the process used to determine if inmates who are past their minimum release date, but still within their maximum sentence and whose release

2

date is uncertain due to factors beyond the DOC's control, are eligible to receive DAA treatment; (2) whether Defendants are violating the Settlement Agreement by failing to treat "especially compromised" inmates regardless of sentence status; and (3) whether Defendants are violating the Settlement Agreement by failing to provide meaningful referrals for post-release treatment in the community.

## Discussion

### I.    Evaluation of the "Most Likely" Release Date

The Settlement Agreement incorporates the VitalCore 2021 HCV Treatment Policy ("VitalCore Policy").  ECF No. 114-3 at 7, ¶ 6.  Under the VitalCore Policy, inmates who are past their minimum release date, have not yet reached their maximum release date, and whose remaining prison time is unknown are referred to as "Category 2."  For purposes of HCV treatment, the VitalCore Policy states that Category 2 inmates "will be individually evaluated to estimate the most likely remaining period of incarceration."  ECF No. 114-4 at 3.  If it can be determined that an inmate has at least four to six months of incarceration remaining, that individual may begin receiving treatment.  *Id.* The incarceration minimum is reportedly intended to prevent treatment failures, and to reduce the risk of creating a drug-resistant strain of HCV.

3

Plaintiffs submit that the DOC is not conducting the agreed-upon evaluations.  As an example, Plaintiffs cite the case of C.C.  In addition to serving his current sentence, C.C. is being held without bail on a pending felony charge.  He has reportedly been in custody since January 2021 and has not been cleared for DAA treatment.  According to the Declaration of DOC Director of Classification Joshua Rutherford, C.C. is being denied treatment because he has other "pending charges in cases yet to be adjudicated.  He is not eligible for release until those charges are resolved thus the duration of his stay in facility is directly dependent upon the criminal court proceedings that VTDOC does not control."  ECF No. 150 at 53, ¶ 9.  Mr. Rutherford further explains that "[a]t no time will I ever 'guess' as to how long individuals will be kept in facility that are pending charges, extradition or have a detainee status of unknown length from Federal holds, ICE detainers or fugitives from justice."  *Id.* at 54, ¶ 12.  Having worked for the DOC for over 21 years, Mr. Rutherford has experience with inmates whose detained status could last for "days, weeks or months and are wholly subject to various court and administrative proceedings," making the remaining incarceration period impossible to predict. *Id.*, ¶ 13 (". . . the length of which I cannot predict").

Mr. Rutherford's Declaration demonstrates that a Category 2 inmate will generally be excluded from treatment if their period

4

of incarceration is beyond the DOC's control.  That practice is inconsistent with the Settlement Agreement's assurance of a case-by-case "estimate" of "the most likely remaining period of incarceration."  ECF No. 114-4 at 2.  While Mr. Rutherford has reasonably declined to "guess" as to an inmate's most likely remaining incarceration period, the Settlement Agreement nonetheless requires an estimate.  Simply stating that the release date is uncertain is insufficient under the terms agreed to by the parties.

The Court and the Plaintiffs acknowledge the potential risks associated with an unexpectedly early release and discontinuation of treatment.  Plaintiffs' expert, Dr. Stacey Trooskin, M.D., Ph.D., M.P.H., references the practice of providing inmates with their remaining medication at the time of release, together with information in their release papers about how and where to continue treatment.  *See* ECF No. 140-1 at 9, ¶ 55 (Trooskin Declaration).  Although that practice is not a part of the Settlement Agreement, the Court takes it into consideration.

The Court finds that Defendants have not complied with the Settlement Agreement to extent that Category 2 inmates are each entitled to an estimate of their remaining prison time.  While pending charges, detainers, or holds may make it difficult to estimate with precision, the VitalCore policy nonetheless

5

requires an individual assessment of the most likely remaining period of incarceration. Defendants may not exclude inmates from treatment simply because their remaining period of incarceration is out of the DOC's control and therefore uncertain.

Accordingly, as to this issue, the motion to enforce the Settlement Agreement is granted. Defendants must provide the agreed-upon estimate for each Category 2 inmate and articulate a transparent process for making that assessment. For present purposes, Defendants must make such individual assessments for C.C. and any other class members who are similarly situated.

## II. "Especially Compromised" Inmates

The VitalCore Policy requires immediate referral and treatment for inmates who are "especially compromised" regardless of their sentence status. ECF No. 114-4 at 1-2. Plaintiffs contend that Defendants have failed to abide by that portion of the Policy, and that they instead consider the length of incarceration for even the most serious HCV cases. As an example, Plaintiffs note the case of inmate M.T., whose medical records suggest a denial of treatment based upon a low FIB-4 score and a sentence status of "Past Min[imum sentence]." ECF No. 140 at 9. Plaintiffs criticize Defendants not only for citing the "Past Min" status, but also for relying on the FIB-4 score.

In support of their motion to enforce, Plaintiffs offer Dr. Trooskin's opinion of M.T.'s condition.  Briefly stated, Dr. Trooskin believed that M.T.'s symptoms were related to Hepatitis C and that he should be considered "especially compromised." Defendants' declarant Dr. Steven Fisher disagreed, attributing some of M.T.'s symptoms to other causes including opiate use disorder.  Factual issues regarding M.T. are no longer relevant to the motion to enforce, as M.T. began receiving DAA treatment on February 7, 2023.  Nonetheless, the dispute about the "especially compromised" designation remains.

The VitalCore Policy does not define "especially compromised."  Dr. Fisher defines "especially compromised" as the presence of "co-morbidities that warrant having Hepatitis C treatment to avoid further health complications."  ECF No. 150 at 49, ¶ 36.  There is no dispute that an inmate's "especially compromised" status should be determined based on more than a FIB-4 score or cirrhosis.  *Id.*; ECF 150 at 10.

Defendants argue that any lack of clarity as to the definition of "especially compromised" could have been explored in discovery, and that Plaintiffs are now trying to re-write the Settlement Agreement.  Defendants' witness Max Titus testified in his deposition that the term was to be interpreted by medical providers based upon their clinical experience.  ECF No. 150 at 5 (citing Titus deposition).  The Court agrees that "especially

compromised" is a matter of clinical opinion and expertise. Nonetheless, that expertise must be applied according to accepted practice, and both sides agreed that exclusive reliance on a FIB-4 score is insufficient.  *Id.* at 49, ¶ 36.

Moreover, consideration of an inmate's sentence violates the "especially compromised" provision.  The note in M.T.'s file denying treatment with reference only to a FIB-4 score and his "past min" status, at least on its face, did not comply with the VitalCore Policy or the intent of the Settlement Agreement.  The motion to enforce as to this issue is granted, and going forward the assessment of "especially compromised" must be conducted based upon medically-accepted criteria.

## III. Failure to Provide Referrals for Treatment in the Community

The final unresolved issue is the question of referrals for treatment post-release.  The VitalCore Policy requires "referrals for follow-up care" and "a referral for treatment in the community" for pre-trial detainees who are released with a confirmed infection.  ECF No. 114-4 at 3.  Dr. Trooskin opined that upon release "patients should be provided linkage to community healthcare for surveillance for HCV-related complications."  ECF No. 140-1 at 9, ¶ 52.  Plaintiffs argue that the Court should accept Dr. Trooskin's assertion as a statement of the standard of care, and that Defendants are failing to provide class members with specific referrals.

8

The VitalCore Policy requires individual referrals for treatment, but only as to the pre-trial detainee population. ECF No. 114-4 at 3.  Plaintiffs cite the example of inmate S.P. ECF No. 140 at 17 n.8; ECF No. 173 at 6.  S.P. was a Category 2 inmate and not a pre-trial detainee.  *Id.*  The Court can only grant relief within the express confines of the Settlement Agreement.

Defendants appear to address Plaintiffs' argument with respect to all class members and submit that Vermont's rural nature makes individual referrals difficult.  Defendants contend that they are only required to offer referrals to a patient's existing community health care provider, the Vermont Chronic Care Initiative, or University of Vermont Medical Center. Defendants also inform the Court that in order to assist with continuity of care, advance notice of an impending release is required.

It is not clear from the record that Defendants are violating the referral policy with respect to pre-trial detainees.  In general, the Court notes that specific referrals are most likely consistent with the standard of care as described by Dr. Trooskin, and with the intent of the Settlement Agreement.  Nonetheless, the Court cannot find that Defendants are in violation of any specific referral provision in the

Settlement Agreement or the VitalCore Policy, and denies the motion to enforce on that issue.

## Conclusion

For the reasons set forth above, the motion to enforce the Settlement Agreement (ECF No. 139) is granted in part and denied in part.  Plaintiffs' motion to file certain materials under seal (ECF No. 141) is granted.  Consistent with the Court's ruling on the motion to enforce, Defendants shall:

> 1) conduct individual assessments of the "most likely" period of incarceration for Category 2 inmates, and provide treatment if appropriate for C.C. and any other class members who are similarly situated;
>
> 2) articulate in writing a transparent process for assessing a Category 2 inmate's "most likely" length of incarceration;
>
> 3) clarify with medical personnel that patients may be "especially compromised" based on more than a FIB-4 score;
>
> 4) document compliance with these requirements with Class Counsel through the end of 2023.

The Court further notes that the DOC's contract with VitalCore ends effective June 30, 2023, after which a new contract will begin with Wellpath, LLC as the medical contractor.  The DOC shall work with Wellpath, LLC to effectuate the above relief.

DATED at Burlington, in the District of Vermont, this 12th day of June, 2023.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge